Opinion of the Court, by
Judge Mills.
THIS is an action of ejectment, brought by the appellees, who gave evidence on the trial, proving the boundary of a patent in the name of their ancestor, covering the land in dispute, and also tending to show that they had been upwards of twenty years in possession of the claim, under their patent, before suit brought.
The defendants gave in evidence adverse patents, and, to prove possession under them, asked a witness if a certain Mr. Stewart, who lived on the land, had not rented the land in 1803 or 1804, under the adverse patentee. The witness answered, he could not tell. A paper, signed by himself, was then handed to him, to refresh his recollection. The paper was dated about the period in question, and purported to be a statement then made and signed by the witness, detailing transactions relative to the renting or lease aforesaid. The witness, after examining the paper, stated that it was his hand-writing, and that he wrote it, and he had no doubt it contained the truth; but, upon reflection, he had no recollection of the transactions stated in the paper, other than what the paper contained, and that he could not speak of them independent of the paper. The court rejected the paper, and would not let it go in evidence, and this is the first question presented in this court.
It cannot be pretended, that such a memorandum, written by a stranger, at the date of any transaction, would itself be evidence of the facts it contained. It is well settled, that a witness may use such memorandums to refresh his recollection; but he must speak from his recollection, and not the memorandums. As *389 this witness could not do that, the memorandum itself was properly rejected. It could not be for the use of the jury; the witness alone could use it; and as it did not aid his recollection, it was proper for no other purpose.
What authentication of a deed executed in Virginia in 1804, for land lying in Kentucky, sufficient.
The usual mode of authenticating the acknowledgment of deeds, meant by the acts of assembly, is the annexation of the seal of the court to the clerk’s certificate of acknowledgment.
The act of congress does not apply to this subject, even when deeds have been acknowledged in open court.
Of the presumptions to be indulged since the burning of the records of the Fayette county court, in favor of those who acted as executors, claiming their authority from that office.
The same witness was asked, whether he had not often heard the tenant aforesaid acknowledge that he claimed under the patent or title set up by the defendants below, now appellants. A question was also asked, of the same purport, with regard to another occupant, who was said to be dead. Also, the witness was asked whether the holder of the title, James Barbour of Virginia, did not write to him, the witness, acknowledging that he had sold the land to one of the tenants. These questions were rejected as improper, by the court below, and, no doubt, rightly. The whole was an attempt to introduce the sayings of others as evidence, when none of them come within the rules which admit of hearsay evidence.
The defendants then tendered an enrolled copy of a deed from the records in the proper county, made by James Barbour of Virginia to William Shelton, under whom many of the present appellants claimed. This deed was dated on the 3d of September 1804, and on the same day was acknowledged in open court, in Albemarle county, Virginia, and by that court ordered to be certified to the proper recording office in this state. Of this, the clerk of that court gave a certificate in the usual form, and thereto affixed the seal of his office. Two persons, who style themselves justices of the peace in and for Albemarle county, certify that the clerk is clerk, and that his certificate is in due form. In less than two months, this deed was produced to the clerk’s office where the land lay, and duly admitted to record. Long after this suit was brought, the deed was again acknowledged by Barbour, before two justices of the peace in and for Albemarle county. The clerk certifies that they are justices of the peace, and affixes the seal of his office. A person styling himself eldest magistrate of that county, certifies the clerk to be clerk, and that his certificate was in due form of law. It was, in this shape, admitted by the court as a recorded deed at the date of the last acknowledgment, and rejected as a deed before that period. The deposition of Barbour was offered, to prove this a deed at its date, *390 but rejected on account of his interest, he having warranted the land generally. Barbour was, no doubt, an incompetent witness to prove any thing on this trial, where the possession of the land he had warranted was the question to be tried, and the possession was demanded by an adverse claim. But the rejection of this deed, as not properly recorded on its first authentication, was not so correctly decided by the court below.
By the act of Virginia of 1785, which accords with ours of 1796, regulating conveyances, in the 3d section of each, it is provided, that if the party about to execute such writing, reside not in the commonwealth, the acknowledgment by the party before any court of law, certified by such court, in the manner such acts are usually authenticated by them, and offered to the proper court to be recorded within eight months after the sealing and delivering, it shall be as effectual as if done in the proper court of this state. The only difficulty which could occur in construing this act, arises from the words, “ in the manner such acts are usually authenticated by them.” These words, however, have long since received a cotemporaneous construction. The usual mode of authenticating the acts of courts, is, by annexing the certificate of the clerk and seal of the court, as the mayor usually annexes the seal of the corporation; and in this mode the practice has long prevailed, so far as it has fallen under the observation of this court.
Some doubts are entertained, whether the words used in this act do not refer these officers, who are authorised to take the acknowledgment of a deed, to their own laws, for the manner of authentication. But, if this be the meaning, the authentication of this deed furnishes sufficient evidence that the proper mode has been adopted, and the deed was entitled to record in the proper office in due time. We, therefore, conceive the copy ought to have been admitted as a recorded deed.
It may have been supposed that the act of congress operated on this matter, and the want of the certificate of the presiding magistrate may have caused the rejection of this deed. Our statutes require no such certificate, and we do not conceive the act of congress, which only provides how the public acts, records and judicial proceedings shall be authenticated, to make *391 them evidence, has any bearing on this matter. It certainly never was intended to operate on the municipal regulations of the different states, so as to affect their modes of conveying their own domain, or to point out how such conveyances are to be authenticated, before they are placed on the state records. After they are placed there, the act of congress points out the mode of authentication, to make them evidence elsewhere; but it by no means determines what shall compose the record.
There were sundry other questions made, and decided by the court below; but most of them appear to have arisen out of the rejection of this deed, which covers most of the land recovered. The patent under which the defendants claim, was elder than that of the lessors of the plaintiff, and by the deed being rejected, the defendants were left without privity of title with this patent, and the plaintiffs were permitted to recover on their length of possession, although the elder grant existed on the ground. As it is probable that on the admission of this deed most of these questions will not occur, some of them will not be further noticed. Two of them, however, deserve attention. The patent set up by the defendants was one of two adjoining patents in the same name, which had probably been surveyed in one inclusive survey, and the division corners called for in the patents, are stakes. Both surveys considered as one, have four corners and lines. Three of the corners of the inclusive survey are found; at the fourth there never was a corner marked, and the patent calls for no corner, but barely, in approaching the corner, calls for two hundred and sixty poles on the line of an adjoining survey. To run the two lines from the corners found, to their intersection, by course, and there to fix the corner, the eastern boundary of the survey, which is the line of 260 poles, is extended far longer than that number; and the question is, shall that point of intersection which extends the length of this line, or the termination of the 260 poles, be fixed upon as the corner? We have no hesitation in fixing on the termination of the 260 poles as the true corner, and making the course of the next line yield to the distance called for in the eastern boundary; and from the termination of the 260 poles, a line ought to run direct, such a course as will strike the next known corner. This is a *392 much stronger case than Preston's heirs vs. Bowmar, &c. 2 Bibb 493, in which this mode was adopted; for the patent, in this instance, evidently shows no corner was ever made, and confines itself to that distance on the neighboring line. This is the mode of closing the survey adopted by the inferior court.
Some of the tenants claimed under a tract patented in the name of William M’Connell, who was proved to have died in Fayette county, about the year 1794. The records of Fayette county court were shown to be burnt in 1802 or 1803. Some fragments of the record of the original will were produced on the trial, not consumed, but the certificate of probat was gone. A copy of the will was produced, attested by the deputy clerk of the Fayette county court, or one who wrote there before the office was consumed. The will empowered his executors to sell lands, and appointed his wife and one other as executors. Proof was adduced that his wife acted as executrix, after the death of M’Connell, and made sale of out-lands; but no direct proof that she ever qualified as such, and took letters testamentary, was adduced. This was done to lay the ground-work of introducing a deed made by said executrix to some of the defendants, who claimed under a patent in the name of said William M’Connell. But there being no other proof that said executrix ever qualified as such, the court excluded the will and deed from the jury, and instructed them that the papers and evidence aforesaid were not sufficient to authorise the executrix to sell land under the authority of the will; to which decision the defendants excepted.
We cannot concur with the court below in excluding these circumstances from the jury. We conceive they are sufficiently strong to have been left with the jury, after so great a lapse of time and the destruction of the records, as conducing to show that letters testamentary were granted, or rather as creating a presumption, which the jury might have indulged, that such was the fact. So much time having elapsed since the death of the testator and the probat of the will, it could hardly be expected that better evidence could be adduced; and the consequences might be serious indeed, if no presumption could be indulged in favor of the existence of a particular portion of a record, such as the grant of letters testamentary, after the office had been consumed.
*393 The judgment must be reversed with costs, and the cause remanded for new proceedings not inconsistent with the foregoing opinion.