Joseph David MARTIN, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

2013–SC–000519–MR

Supreme Court of Kentucky.

RENDERED: FEBRUARY 19, 2015

2 

COUNSEL FOR APPELLANT: Jason Apollo Hart

COUNSEL FOR APPELLEE: Jack Conway, Attorney General of Kentucky,

James Hays Lawson, Assistant Attorney General

## OPINION OF THE COURT BY CHIEF JUSTICE MINTON

A circuit court jury convicted Joseph David Martin of fourteen counts of first-degree unlawful transaction with a minor,[1] fourteen counts of incest, and a single count each of use of a minor in a sexual performance, complicity to tampering with a witness, and complicity to tampering with physical evidence. The jury recommended Martin consecutively serve the statutory maximum for each conviction, totaling 580 years. And the trial court adopted this recommendation in full—ignoring the consecutive-sentence cap in Kentucky Revised Statutes (KRS) 532.110—and imposed a sentence of 580 years' imprisonment. Martin appeals from the resulting judgment as a matter of right.[2]

Martin alleges the trial court erred by (1) instructing the jury in a manner that violated his right to a unanimous verdict; (2) failing to instruct the jury regarding the consecutive-sentence cap in KRS 532.110 or to impose a sentence consistent with that cap; and (3) allowing the victim during her testimony at trial to refresh her memory with previously written notes.

We agree with Martin that the trial court's jury instructions, except for those pertaining to his complicity charges, denied him a unanimous verdict. So we are constrained to reverse those convictions. We find no error in Martin's complicity to tampering with a witness and complicity to tampering with physical evidence convic-

tions. And we affirm those convictions. We address the other allegations of error as they may be relevant to a retrial.

## I. FACTUAL AND PROCEDURAL HISTORY.

Joseph and Tina Martin were married when Sally,[3] Tina's daughter from a previous relationship, was a year old. Sally resided in the Martins' marital home from the inception of the marriage until Martin's arrest. Three more children were born to the Martins.

In response to disturbing changes in Sally's behavior, Martin, Tina, and Sally entered into family counseling with their pastor, James Maroni, when Sally was sixteen years old. It was during this counseling session that Sally revealed Martin treated her more like a girlfriend than a step-daughter. This prompted Martin to confess that he had engaged in an on-going sexual relationship with Sally for the past three years. Tina also admitted she was informed of the relationship on two prior occasions. Pastor Maroni then privately informed Martin and Tina that he had to report the sexual activity to the proper authorities.

Days later, Martin voluntarily met with Detective Tim Moore at the Kentucky State Police Post. During the meeting, Martin again confessed his sexual relationship with Sally. He disclosed that over the course of three years he engaged in sexual intercourse, oral sex, and anal sex with Sally starting when she was thirteen years old. Martin also admitted to videotaping some of their sexual interactions

---

1. Thirteen of Martin's first-degree unlawful transaction with a minor convictions were Class B felonies because the victim was under age sixteen at the time of the criminal act. The fourteenth conviction was a Class C felony because the victim was under age eighteen at the time of the offense. *See* KRS 530.064.

2. Ky. Const. § 110(2)(b).

3. Consistent with, our practice, we have chosen a pseudonym to protect the child's identity.

beginning when Sally was approximately fourteen years old. In support of his oral confession, Martin provided Detective Moore with a handwritten statement explaining the nature of his relationship with Sally and chronicling specific sexual events. Detective Moore arrested Martin on the basis of his oral and written confessions.

The grand jury indicted Martin on fourteen counts of first-degree unlawful transaction with a minor and one count of use of a minor in a sexual performance (Indictment No. 11–CR–00061). The fourteen counts of unlawful transaction with a minor charged that Martin engaged in sexual intercourse, oral sodomy, or anal sodomy with Sally between October 2, 2008, and March 18, 2011.[4] The count of use of a minor in a sexual performance was alleged to have taken place during the same time period. The grand jury returned another indictment against Martin some months later. The second indictment charged an additional fourteen counts of incest (Indictment No. 12–CR–00060). All fourteen counts charged that Martin engaged in sexual intercourse or deviate sexual intercourse with Sally, his step-daughter, between September 2, 2008, and March 18, 2011.

While Martin was in jail awaiting trial, Sally withdrew her allegations of a sexual relationship with Martin. This prompted Detective Moore to visit Martin's mother, Joyce McClain. During this visit, McClain provided Detective Moore with letters Martin sent her from jail. In these letters, amidst other incriminating statements, Martin urged McClain to dispose of a computer and two external hard drives,[5] and told McClain to inform Sally he planned to claim his earlier confessions were fabricated.

Based on these letters, the grand jury returned a third indictment against Martin, this time charging complicity to tampering with physical evidence and complicity to tampering with a witness (Indictment No. 13–CR–00019).

At trial, the Commonwealth presented testimony from Detective Moore, Pastor Maroni, and Tina, among others. Their testimony was consistent with the facts as outlined above.

Sally, who, according to evidence adduced at trial, has an IQ of 72, also testified. She revealed her sexual relationship with Martin and described many of their sexual interactions in considerable detail. Sally's testimony also described the three different homes in which her family lived during the time period relevant to the charges made in the indictments. The first home was destroyed by fire, causing the family to move to a nearby double-wide trailer where they remained until a new home could be built. Sally was unable to remember the dates of each sexual interaction described in her testimony, but she did provide a temporal reference for each sexual act by noting in which of the three homes it took place. Sally's testimony showed that the sexual acts were frequent and continuous throughout the time period relevant to Indictment Nos. 11–CR–00061 and 12–CR–00060.

Martin testified on his own behalf. He denied any sexual relationship with Sally. Martin explained he fabricated his pre-

---

4. At trial, the Commonwealth amended Indictment No. 11–CR–00061 to reflect a beginning date of September 2, 2008, consistent with the time period set forth in Indictment No. 12–CR–00060.

5. Detective Moore was able to recover the computer and hard drives referred to in Martin's letters. Examination revealed hundreds of pictures of child pornography and other pictures of pre-pubescent children.

trial confessions because two unidentified men threatened to kill Tina and their children if Sally was not moved into her father's home. According to Martin, Sally wanted to live with her father, so she agreed to cooperate with the fabrication whereby Martin would confess a sexual relationship to a pastor in order to facilitate Sally's removal from his home. As part of this plan, Martin claims Sally agreed to recant her allegations upon turning eighteen in order to minimize any criminal penalties that may be imposed on him.

The jury convicted Martin of all charges and recommended the maximum allowable sentence for each count, to be served consecutively for a total of 580 years' imprisonment. The trial court accepted the jury's recommendation and entered a conforming judgment. This appeal followed.

## II. ANALYSIS.

### A. The Jury Instructions Leading to Martin's Convictions Under Indictment Nos. 11–CR–00061 and 12–CR–00060 Violated his Right to a Unanimous Verdict. Those Convictions Must be Reversed.

■ Martin claims the jury instructions by which the jury convicted him of all charges presented in Indictment Nos. 11–CR–00061 and 12–CR–00060 violated his right to a unanimous verdict. This issue is unpreserved, so we review for palpable error.[6]

### 1. The Instructions for the Charges Presented in Indictment Nos. 11–CR–00061 and 12–CR–00060 Violated Martin's Right to a Unanimous Verdict

■ Martin's allegation provides us an opportunity to explore each of the two archetypal unanimous-verdict violations. The first type of unanimous-verdict violation occurs when multiple counts of the same offense are adjudicated in a single trial. In those situations, we have repeatedly found it a unanimous-verdict violation for a trial court to submit identical instructions to the jury.[7] If a trial court fails "to include some sort of identifying characteristic in each instruction that will require the jury to determine whether it is satisfied from the evidence the existence of facts proving that each of the separately charged offenses occurred," [8] then the defendant is not guaranteed to receive a unanimous verdict from the indistinguishable instructions.

■ More recently, we clarified a second type of unanimous-verdict violation. In *Johnson v. Commonwealth*, we held that the requirement of a unanimous verdict is violated when "a general jury verdict [is] based on an instruction including two or more separate instances of a criminal offense, whether explicitly stated in

---

**6.** This allegation of unpreserved instructional error is not barred from judicial review by our recent holding in *Martin v. Commonwealth*, 409 S.W.3d 340, 346 (Ky.2013), because Martin challenges the adequacy of the content of an instruction that was given to the jury, not the propriety of the instruction being given. *Id.* ("In summary, assignments of error in the 'giving or failure to give' an instruction are subject to [RCr 9.54(2)'s bar on appellate review]; but unpreserved allegations of defects in the instructions that were given may be accorded palpable error review under

RCr 10.26."). *Contra infra* Part II.B. 1 (holding that Martin's failure to request a consecutive-sentence instruction at trial bars judicial review of that alleged error).

**7.** *See, e.g., Harp v. Commonwealth*, 266 S.W.3d 813, 817–18 (Ky.2008); *Bell v. Commonwealth*, 245 S.W.3d 738, 744 (Ky.2008); *Combs v. Commonwealth*, 198 S.W.3d 574, 580 (Ky.2006).

**8.** *Harp*, 266 S.W.3d at 818.

the instruction or based on the proof." [9] This type of unanimous-verdict violation occurs when a jury instruction may be satisfied by multiple criminal acts by the defendant. When that is the case, and the instruction does not specify which specific act it is meant to cover, we cannot be sure that the jurors were unanimous in concluding the defendant committed a single act satisfying the instruction. Instead, the jury's verdict only reflects their unanimous view that the defendant committed the crime, without necessarily resulting in a unanimous conclusion that the defendant committed a single criminal act beyond a reasonable doubt.[10] Therefore, in those circumstances, the jury fails to reach a unanimous verdict.

■ The Commonwealth concedes error in the following instructions, which suffer from a unanimous-verdict defect of the first type:

**Indictment No. 11–CR–00061:**
- Counts II and III;
- Counts V and VI;
- Counts VIII and IX;
- Counts XI and XII; and
- Counts XIII and XIV

**Indictment No. 12–CR–00060:**
- Counts II and III;
- Counts V and VI;
- Counts VIII and IX;
- Counts XI and XII; and

- Counts XIII and XIV

We agree with the Commonwealth's concession. Each of the counts presented in pairs above were presented to the jury with identical instructions and covered the same date range. As described above, when a trial court fails adequately to distinguish one instruction from another, as is the case with these coupled instructions, a unanimous-verdict violation arises.

■ The Commonwealth argues the remaining convictions [11] do not violate Martin's unanimous-verdict right because the instructions supporting these convictions were not duplicitous and included distinct date ranges. This position is correct as it relates to the first type of unanimity violation, one borne from indistinguishable instructions. But this position ignores the second type of unanimous-verdict violation, which arises when evidence adduced at trial presents the jury with multiple acts by the defendant that may satisfy a single general-verdict instruction.

The testimony presented at trial showed the illicit sexual relationship that Martin forced upon Sally was pervasive and continuous throughout the years relevant to each indictment and each instruction. Sally's testimony attempted to provide the necessary temporal distinction by referring to the home where each sexual assault took place, but her testimony nonetheless

9. *Johnson v. Commonwealth*, 405 S.W.3d 439, 449 (Ky.2013).

10. This idea is perhaps best explained by the following illustrative analogy provided in *Johnson*:

[The second type of unanimous-verdict violation] is like giving directions to a McDonald's on the east side of town to half a group of travelers, and directions to one on the west side of town to the other half, despite a rule that requires all the travelers to go to the same restaurant. Both groups

arrive at *a* McDonald's, but not all the travelers are in the same place.
*Id.* at 455.

11. Those are: Counts I, IV, VII, X, and XV of Indictment No. 11–CR–00061. Each of those instructions led to first-degree unlawful transaction with a minor, victim under sixteen, convictions, with the exception of count XV, which yielded a use of a minor in a sexual performance conviction. Counts I, IV, VII, and X of Indictment No. 12–CR–00060 were also not conceded as error. Those counts all resulted in incest convictions.

included evidence of multiple criminal acts occurring within the time period set out in each instruction. Because the instructions were not tailored to reflect the evidence and require a unanimous verdict regarding a specific factual scenario, we cannot be sure the jury unanimously concluded that Martin committed any one specific act in reaching conviction under the remaining instructions. So we must conclude that each of the remaining instructions violates Martin's right to a unanimous verdict.

### 2. The Unanimous–Verdict Errors Were Palpable, Requiring Reversal

■ Having found the jury instructions used to reach Martin's convictions under Indictment Nos. 11–CR–00061 and 12–CR–00060 violate his unanimous-verdict right, we must now decide if those violations rise to the level of palpable error. We conclude they do.

Kentucky appellate courts may provide relief for unpreserved errors, such as the unanimous-verdict error alleged by Martin, if the error is palpable and results in manifest injustice.[12] In *Martin v. Commonwealth*,[13] the seminal case defining *manifest injustice*, this Court outlined a clear, dichotomous test allowing manifest injustice to be found in two distinct ways. First, we reaffirmed the then-prevailing palpable-error standard, acknowledging that manifest injustice may be found upon a showing of "a probability of a different result" absent the error.[14] Second, the *Martin* court expanded the definition of palpable error by explaining that without regard for the probability of a different result an "error so fundamental as to threaten a defendant's entitlement to due process of law" will also constitute manifest injustice under RCr 10.26.[15] When applying palpable-error review, this Court has also acknowledged that it is the appellate court's duty to "plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was shocking or jurisprudentially intolerable."[16]

The right to a unanimous verdict in criminal cases has long been recognized as required by the Kentucky Constitution;[17] it also has roots in statutory law[18] and the rules of this Court.[19] As urged by *Martin*, and in light of a growing number of appeals alleging unanimous-verdict errors, this Court, in *Johnson* and its companion case, *Kingrey v. Commonwealth*,[20] endeavored to explore this omnipresent right possessed by criminal defendants and "plumb the depths" of unanimous-verdict errors to determine if they result in manifest injustice. As a result of this searching inquiry, *Johnson* and *Kingrey* both held unanimous-verdict violations to be palpable error mandating reversal. The *Johnson* court concluded that an error that "violates a defendant's right to a unanimous verdict and also touches on the right to due process [ ] is a fundamental error that

12. Kentucky Rules of Criminal Procedure (RCr) 10.26.

13. 207 S.W.3d 1 (Ky.2006).

14. *Id.* at 3.

15. *Id.*

16. *Id.* at 4; *see also Allen v. Commonwealth*, 286 S.W.3d 221, 226 (Ky.2009) ("An error is palpable only if it is 'shocking or jurisprudentially intolerable.'").

17. Ky. Const. § 7; *see also Johnson*, 405 S.W.3d at 448; *Cannon v. Commonwealth*, 291 Ky. 50, 163 S.W.2d 15 (1942).

18. KRS 29A.280(3).

19. RCr 9.82(1).

20. 396 S.W.3d 824 (Ky.2013).

is jurisprudentially intolerable." [21] *Kingrey* echoed that sentiment, adding that the right to a unanimous verdict is a substantial one borne of our constitution, the violation of which makes nugatory any meaningful appellate challenge to the sufficiency of the evidence.[22] It is important to note that both *Johnson* and *Kingrey* found palpable error as a result of the impact that a unanimous-verdict violation has on the defendant's due-process rights and overall fairness of the trial.

The precedential weight of *Johnson* and *Kingrey* is inescapable, even in light of overwhelming evidence of guilt. Here, the evidence of Martin's multiple pretrial admissions and confessions renders him incapable of showing a probability of a different outcome. But that circumstance does not dispose of the palpable nature of the unanimous-verdict violation because it contemplates only one of the two bases under which palpable error may be found and ignores the basis upon which *Johnson* and *Kingrey* rely.

As discussed above, both *Johnson* and *Kingrey* held that a violation of the right to a unanimous verdict is reversible palpable error. To reach that conclusion, both cases relied solely on the substantial nature of the unanimous-verdict right coupled with the due-process impingement resulting from its violation. Nowhere in either case did this Court weigh the strength of the evidence or the probability of a different result. Nor were the factual idiosyncrasies contemplated as part of the palpable-error analysis. Both cases reached their holdings after concluding that a unanimous-verdict violation is an "error so fundamental as to threaten a defendant's entitlement to due process of law." [23] Because *Johnson* and *Kingrey* were decided after an assessment of the overarching due-process implications that necessarily stem from *any* unanimous-verdict error, their holdings carry binding precedential weight in all unanimous-verdict error cases, the weight of the evidence against the defendant notwithstanding.

The binding nature of the *Johnson–Kingrey* precedent is evident on review of our recent unanimous-verdict jurisprudence. Since rendition of *Johnson* and *Kingrey*, this Court has cited one or both of those cases as the basis for finding palpable error in every instance where we have found a unanimous-verdict violation.[24] This Court has even stated that unanimity errors are "deemed palpable." [25] We have also held unanimity errors to be palpable in light of overwhelming evidence of guilt, specifically confessions to law enforcement.[26]

■ Based on the foregoing, we must conclude that all unanimous-verdict violations constitute palpable error resulting in

21. *Johnson*, 405 S.W.3d at 457.

22. *Kingrey*, 396 S.W.3d at 831–32.

23. *Martin*, 207 S.W.3d at 3; *see also Johnson*, 405 S.W.3d at 457; *Kingrey*, 396 S.W.3d at 831–32.

24. *Little v. Commonwealth*, 422 S.W.3d 238, 250 (Ky.2013); *Bauer v. Commonwealth*, No. 2012–SC–000241–MR, 2014 WL 4113110 (Ky. Aug. 21, 2014). Although this is an admittedly small sample, it is nonetheless persuasive because it encompasses our entire post-*John-* *son–Kingrey* unanimous verdict jurisprudence.

25. *Little*, 422 S.W.3d at 250.

26. *Bauer*, 2014 WL 4113110 at *5; *see also Davis v. Commonwealth*, No. 2009–SC–000207–MR, 2010 WL 3377755 at *4 (Ky. Aug. 26, 2010) (holding, pre-*Johnson–Kingrey*, that a unanimous-verdict violation constituted palpable error when defendant admitted to multiple instances of impermissible sexual contact with the victim).

manifest injustice. Martin's case being no exception, we reverse his convictions under Indictment Nos. 11–CR–00061 and 12–CR–00060 because they were reached by palpably erroneous instructions that failed to guarantee his right to a unanimous verdict.

**B. We Decline to Review the Unpreserved Allegation of Instructional Error in Failing to Instruct the Jury on the Seventy–Year–Consecutive–Sentence Cap in KRS 532.110(1)(c), but Martin is Entitled to Such an Instruction Upon a Retrial.**

Martin also alleges the trial court committed instructional error by failing to instruct the jury on the seventy-year-consecutive-sentence cap in KRS 532.110.[27] Martin concedes this error is unpreserved. He nonetheless seeks palpable error review, claiming entitlement to a new sentencing phase. The Commonwealth agrees that Martin's sentence violates KRS 532.110(1)(c), but contests the necessity of a new sentencing phase. Instead, the Commonwealth suggests the proper remedy is to vacate the judgment and remand the case to the trial court with instructions to enter a KRS 532.110–compliant judgment.

■ During its closing argument, the Commonwealth informed the jury that the longest sentence Martin could be ordered to serve was seventy years, regardless of their recommendation.[28] The Commonwealth nonetheless encouraged the jury to recommend a sentence in excess of that seventy-year limitation to "send a message."[29]

During its reading of the penalty-phase instructions, the trial court orally advised the jury that the previously referenced seventy-year-sentencing cap applied to all three indictments jointly, not separately. But, despite this acknowledgement of the effect of KRS 532.110(1)(c), the published jury instructions were devoid of any reference to the seventy-year cap and explicitly permitted the jury to recommend sentences of up to 290 years'. imprisonment, 280 years' imprisonment, and ten years' imprisonment for Indictment Nos. 11–CR–00061, 12–CR–00060, and 13–CR–00019, respectively. These totals were ostensibly based on the aggregate of the maximum sentence for each conviction under each respective indictment without consider-

---

**27.** We recognize that, as part of his challenge to the sentencing phase of his trial, Martin claims the Commonwealth elicited false testimony from a probation and parole officer when "the prosecution argued that the jury could recommend a 300 year sentence, and the probation and parole officer agreed saying 'certainly.'" ·This testimony is facially objectionable, but this misleading argument is premised on Martin's selective quotation of the officer's testimony. Following his agreement that the jury "certainly" could recommend a 300–year sentence, Martin fails to mention that the officer explained that although the jury theoretically *could* recommend such a sentence, the final judgment would ·reflect the statutory seventy-year cap. When the probation and parole officer's testimony is viewed in full, Martin's argument is revealed as disingenuous and a product of his selective quotations from the trial record.

**28.** *See* KRS 532.110(1)(c).

**29.** Although Martin does not specifically take issue with this argument on appeal, we feel compelled to note that despite the wide latitude enjoyed by counsel during closing argument, arguments pleading for the jury to recommend an illegal sentence are to be avoided. *See Swan v. Commonwealth*, 384 S.W.3d 77, 106 (Ky.2012). *But see Cantrell v. Commonwealth*, 288 S.W.3d 291, 299 (Ky.2009) (affirming the prosecution's ability to urge the jury to recommend a harsh, yet statutorily permissible, sentence to "send a message" and deter the defendant from committing additional crimes).

ation of any statutory consecutive-sentence cap. Following these written instructions, the jury recommended the maximum sentence for each indictment be served consecutively, totaling 580 years, the maximum sentence possible under the instructions.

At Martin's sentencing hearing, the trial judge disclosed on the record that she "check[ed] with probation and parole" and was advised that Martin's sentence was subject to the seventy-year cap in KRS 532.110(1)(c). But the trial judge also reported that probation and parole informed her that if she wished to reflect the jury's recommendation in the judgment "Offender Records" would make any necessary adjustments to Martin's sentence to ensure the seventy-year cap was applied according to law. It was with this disclaimer that the trial court sentenced Martin to serve 580 years consecutively and advised him to "request his offender records information to make sure that [the seventy-year cap] is reflected correctly."

Our analysis of this alleged error will be two-fold. First, we address this error as it pertains to Martin's complicity convictions. And, second, we analyze this issue prospectively as a guide to the court's treatment of this issue in the event of a retrial.

### 1. This Issue is not Subject to Appellate Review as it Pertains to Martin's Complicity Convictions.

■ Our reversal of Martin's convictions under Indictment Nos. 11–CR–00061 and 12–CR–00060 reduces Martin's sentence to ten years—five years apiece for each complicity conviction, to be served consecutively. This sentence is well below the seventy-year cap in KRS 532.110(1)(c) and otherwise complies with the relevant consecutive-sentence conventions in KRS 532.110. But this is not dispositive of Martin's allegation of instructional error because he posits that if the jury had been properly instructed regarding KRS 532.110(1)(c), it would have recommended lighter sentences for all his convictions. The continued ripeness of Martin's argument in light of our reversal notwithstanding, we must decline to review this allegation of error as to his complicity convictions. Kentucky Rules of Criminal Procedure (RCr) 9.54(2) provides:

> No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

This rule had been largely ignored and, at best, sporadically applied in favor of providing appellants with palpable-error review of unpreserved allegations of instructional error.[30] Our recent holding in *Martin v. Commonwealth,*[31] however, signaled a change in this arena. In *Martin,* we held that RCr. 9.54(2) charges parties with a duty to present the trial court with its jury-instruction preferences concerning to "the giving or the failure to give" specific instructions.[32] Because of this affirmative duty, we held in *Martin* that "when the allegation of instructional error is that a particular instruction should have been given but was not ... RCr 9.54 operates as a bar to appellate review unless the issue was fairly and adequately pre-

**30.** *See Martin,* 409 S.W.3d at 344.

**31.** *Id.*

**32.** *Id.* at 346.

sented to the trial court." [33]

Joseph Martin admits his entitlement to an instruction outlining the seventy-year-consecutive-sentence cap is unpreserved and was not "fairly and adequately presented to the trial court." Although *Martin* was decided in the context of guilt-phase instructions, its holding applies with equal force to sentencing-phase instructions. [34] So, as a result of Martin's failure in the present case to request the trial court instruct the jury regarding the consecutive-sentence cap in KRS 532.110(1)(c), RCr 9.54 bars our review of this error as it pertains to Martin's complicity convictions.

### 2. Upon Retrial, the Trial Court Should Instruct the Jury on KRS 532.110's Consecutive–Sentence Limitation.

▮ Our rules and precedent prevent a meritorious review of this issue regarding Martin's complicity convictions. But judicial economy mandates we provide review insofar as necessary to guide the trial court in anticipation of a recurrence of this issue in the event of a retrial. In this endeavor, we are compelled to comport with our precedent in *Allen v. Commonwealth,* [35] and require the trial court on retrial to instruct the jury properly regarding the consecutive-sentencing conventions contained in KRS 532.110.

More disconcerting than the trial court's instructional error is the trial court's compounding that error by purposefully disregarding the statute when imposing Martin's sentence and rendering its judgment.

Before rendering the final judgment, the trial court acknowledged she understood KRS 532.110(1)(c) to cap Martin's consecutive sentence at seventy years. But instead of following the statute, the trial court apparently decided to "send a message" by sentencing Martin to serve what is, said plainly, an illegal sentence. To be sure, the court did provide Martin the minimal comfort that although she planned knowingly to enter a judgment that disregarded the law, "Offender Records" would unilaterally clean up after her by ignoring the judgment of the court in order to comply with KRS 532.110(1)(c). The court also charged Martin with "request[ing] his offender records information to make sure that [the seventy-year cap] is reflected correctly."

Seriously troubling to us is the judge's purposeful disregard of the sentencing-cap statute. Our judges are expected to serve as stalwarts of justice, representing the ideologies of fairness and the rule of law. The heinous nature of the charged offenses—and the charges here are atrocious—does not change this. Retribution or the urge to "send a message" must not trump a judge's duty to be faithful to the law. A judge must not abdicate in favor of unnamed administrators in "Offender Records" and to the defendant himself the judge's duty to ensure a legal sentence is imposed in the final judgment. In the future, and in the event of a retrial, the trial court must not delegate its duty to "Offender Records" or to the defendant.

---

**33.** *Id.*

**34.** *See, e.g., Glenn v. Commonwealth,* 436 S.W.3d 186, 189 (Ky.2013) (applying *Martin* as a bar to judicial review of an alleged instructional error during the persistent felony offender phase of trial); *Watts v. Commonwealth,* No. 2013–SC–000021–MR, 2013 WL 2809955 at *4 (June 19, 2014) (applying *Martin* as a bar to appellate review of an alleged

instructional error regarding the trial court's failure to instruct the jury on its ability to recommend multiple sentences to be served consecutively or concurrently).

**35.** 276 S.W.3d 768, 774 (Ky.2008) ("[W]e agree that the jury in any subsequent trial should be instructed on the statutory seventy-year sentencing limit.").

### C. Sally's Use of Notes During her Testimony does not Invalidate Martin's Complicity Convictions, and is Proper on Retrial Provided the Commonwealth Lays a Sufficient Foundation.

During her testimony, Sally used prepared notes to aid her memory concerning the multiple instances of sexual abuse she testified were committed against her by Martin. Martin challenges this practice, claiming the Commonwealth did not lay a proper foundation for the admission of the notes under KRE 803(5). As a result, Martin argues, Sally's testimony was inadmissible hearsay that· so tainted the proceeding as to require reversal. Again, we first review this issue as it pertains to Martin's complicity convictions before directing the trial court how to proceed in the event of a retrial.

### 1. Sally's Use of Notes During her Testimony does not Impact Martin's Complicity Convictions, and, if it did, any Resulting Error is Harmless.

Without addressing the merits of the evidentiary and foundational propriety of Sally's use of prepared notes at trial, a review of the record discloses that the notes were only pertinent to Sally's testimony chronicling the sexual abuse committed against her by Martin. At several points during her testimony, Sally can be seen looking down before answering questions posed by the Commonwealth. Even assuming each downward glance was to consult her notes, no such instance occurred during any portion of her testimony relevant to Martin's complicity convictions. Further, Sally testified her notes were made at the behest of the Commonwealth specifically to aid her in recalling as many occasions of ·sexual abuse as possible. Even though Martin's trial counsel admitted on the record to receiving a copy of Sally's notes, the notes were not made a part of the record on appeal, and Martin does not challenge Sally's testimony that the notes were only relevant to the sexual-assault charges. So the notes could not have been implicated in Martin's complicity convictions.

▮ Aside from the irrelevancy of Sally's notes to her testimony regarding Martin's complicity convictions, the evidence of Martin's guilt on those charges was overwhelming even without Sally's limited testimony. The Commonwealth proffered numerous letters Martin wrote from jail urging his mother to dispose of his computer and hard drives and to pressure Sally into changing her story. Additionally, the Commonwealth also played multiple recorded phone calls between Martin and his mother during the same time period where Martin urged her to dispose of the electronics and communicated his displeasure at her failure to do so. Those letters and phone calls present such compelling evidence of Martin's guilt of the complicity charges that any additional testimony must have been surplusage.

Sally presented no testimony regarding Martin's charge of complicity to tamper with physical evidence because she was seemingly unaware of the letters seeking destruction of the computer and hard drives. The only portion of Sally's testimony related to Martin's charge of complicity to tampering with a witness was devoted to the pressure placed on her by her cousin, Dusty,[36] and Martin's mother that led to her eventual recantation of her

---

36. Dusty is the daughter of Martin's sister. She is near Sally in age, and they attend classes together in school.

sexual-abuse allegations. This testimony culminated with Sally explaining she begrudgingly wrote a letter withdrawing her allegations to satisfy Dusty and Martin's mother, even though she maintained her initial allegations were truthful. Importantly, Sally explicitly testified that she did not know why Martin's family pressured her to recant and never mentioned Martin's own plan to recant. That this testimony touches on Martin's conviction of complicity to tampering with a witness is clear. But it is equally apparent that this testimony was intended to protect Sally's credibility by confronting her pre-trial recantation at the outset of her testimony instead of being probative of Martin's complicity charges.

With this in mind, even if Sally did impermissibly consult her notes during her testimony relevant to Martin's complicity convictions, we cannot find it to be anything but harmless. The evidence of his guilt on those charges was overwhelming, and Sally's testimony was minimal. We conclude there is no "grave doubt" that any erroneous testimony derived from Sally's notes could not have "substantially swayed" the jury in reaching its complicity convictions.[37] We, therefore, affirm those convictions.

### 2. Assuming a Proper Foundation is Laid, the Trial Court may Allow Sally to Use her Notes to Refresh her Memory on Retrial.

Now we turn to the propriety of Sally's use of prepared notes during her possible testimony in the event of a retrial. In arguing this practice is prohibited, Martin commits a common technical error that often occurs when presenting an issue re-

garding a witness's use of notes during testimony: Martin conflates the application of KRE 803(5), the past recollection recorded exception to the hearsay rule, and KRE 612, the present memory refreshed rule, often citing KRS 803(5) while using the nomenclature of KRS 612. Because this distinction is often subtle and confusing, we endeavor to provide a bit of clarity regarding each rule's application before determining whether Sally may refer to her notes at a retrial.

■ Titled "Writing used to refresh memory," KRE 612 states:

> Except as otherwise provided in the Kentucky Rules of Criminal Procedure, if a witness uses a writing during the course of testimony for the purpose of refreshing memory, an adverse party is entitled to have the writing produced at the trial or hearing or at the taking of a deposition, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony, the court shall examine the writing in camera, excise any portions not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available to the appellate court in the event of an appeal.

For a witness's memory to be refreshed under this rule, the offering party must show that "the witness once had personal knowledge of the event about which testimony is sought and ... the witness's memory of that event needs to be re-

---

**37.** *Crossland v. Commonwealth,* 291 S.W.3d 223, 233 (Ky.2009) ("A preserved non-constitutional error is harmless if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.") (internal quotation marks and citation omitted).

vived."[38] This rule codifies the common-law rule allowing any writing to be used to refresh a witness's memory if necessary.[39] True to its name, when a witness refreshes her memory under this rule, the testimony elicited thereafter "is the product of the refreshed memory, not the writing used to refresh it."[40] As a result, the document itself is not admissible into evidence, and the hearsay rule does not apply.[41]

 To the contrary, KRE 803(5) is an exception to the bar on admissibility of hearsay evidence.[42] It operates to allow the content of previously written recordings to be admitted as substantive evidence to prove the truth of the matter asserted in the recording. KRE 803(5) states:

> *Recorded recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not be received as an exhibit unless offered by an adverse party.

 For admission under this rule to be appropriate, the offering party must show the writing was made or adopted by the witness as an accurate reflection of personal knowledge the witness once possessed, and the witness no longer adequately remembers the matter to fully and accurately testify.[43] If this test is met, the recording, which need not be a writing,[44] may be read into the record as substantive evidence but may not be introduced as an exhibit unless offered by the adverse party.

 A review of the record makes clear that the Commonwealth only intended Sally's notes to be used to refresh her memory, not to be admitted as substantive evidence. This is shown, in part, by the absence of the notes from the record and trial exhibits along with the Commonwealth's treatment of the notes during trial. Not long into Sally's testimony, Martin's trial counsel recognized Sally was consulting notes during her testimony. He requested to approach the bench where he objected:

> This is even worse than leading her, Judge.[45] She's referring to notes, and, I

---

38. Robert G. Lawson, The Kentucky Evidence Law Handbook § 3.20(6)(a) (5th ed. 2013); *see also DAV, Dept. of Ky., Inc. v. Crabb*, 182 S.W.3d 541, 551 (Ky.App.2005) ("In Kentucky, we recognize that present memory refreshed requires proof 'that the witness has a memory to be refreshed' and 'that it needs to be refreshed.'") (quoting Robert G. Lawson, The Kentucky Evidence Law Handbook § 3.20(7) (4th ed. 2003)).

39. Lawson, *supra* note 39, at § 3.20(6)(b), (c); *see also, e.g., Commonwealth v. McGarvey*, 165 S.W. 973 (Ky.1914); *Calvert v. Fitzgerald*, 16 Ky. 388 (Ky.1821).

40. *Berrier v. Bizer*, 57 S.W.3d 271, 277 (Ky. 2001).

41. *Id.; see also Crabb*, 182 S.W.3d at 552.

42. *See* KRE 801(c) ("*Hearsay* is a statement, other than one made by the declarant while testifying at the trial of hearing, offered in evidence to prove the truth of the matter asserted."); KRE 802 ("Hearsay is not admissible except as provided by these rules or by rules of the Supreme Court of Kentucky.").

43. Lawson, *supra* note 39, at § 8.85(1); *see also Crabb*, 182 S.W.3d at 552.

44. *Brock v. Commonwealth*, 947 S.W.2d 24, 30–31 (Ky.1997).

45. Before calling Sally to testify, the Commonwealth requested leeway from the court to use leading questions to aid Sally's memory, citing how far removed the incidents were and Sally's cognitive disorder. The court ex-

think, at least she should be asked if she needs notes to refresh her recollection, rather than let her go straight to the notes.

In response to Martin's concerns, the Commonwealth laid the following foundation to support the propriety of Sally's use of notes when it resumed its questioning.

**Commonwealth:** [Sally], I'm going to ask you: Do you even know how many times you had sexual relations with the defendant? Can you even estimate how many times?

**Sally:** No, ma'am.

**Commonwealth:** And was it hard to remember the number of times?

**Sally:** Yes, ma'am.

**Commonwealth:** It looks like you've been referring to some notes. Is that true?

**Sally:** Yes, ma'am.

**Commonwealth:** Okay, um, can you tell me when those notes were made?

**Sally:** Um, I don't know. Like they....

**Commonwealth:** Why were they made?

**Sally:** Because, like, the very first time I was meeting with you, you told me to make some notes on, to see if I could, however many I could remember and then write them down. So I did.

**Commonwealth:** So I asked you to see if you could make some notes about the number of, about specific times you had had this happen to you with the defendant?

**Sally:** Yes, ma'am.

**Commonwealth:** And you did that?

**Sally:** Yes ma'am.

**Commonwealth:** And did you bring those notes with you here today?

**Sally:** Yes, ma'am.

**Commonwealth:** And are they helping you to remember the events?

**Sally:** Yes, ma'am.[46]

The Commonwealth moved the court to allow Sally to continue using her notes to aid her memory following this line of questioning. Martin offered no further objection, and the trial court granted the Commonwealth's motion.

■ Upon consideration of the information in the record, there is nothing inherently improper or objectionable about Sally using her notes to aid her recollection regarding the distinct instances of sexual abuse to which she testified. We, therefore, conclude the trial court may allow Sally to use her notes during her testimony on a retrial provided the Commonwealth first lay a proper foundation as outlined above. We note the Commonwealth did not lay any foundation for, or make mention of, Sally's use of notes until Martin raised an objection. Of course, it is better practice and more proper under our rules of evidence for the offering party to lay a foundation before using, in whatever capacity allowed by our evidentiary rules, the material at issue.

■ It is on the topic of foundation that Martin raises one last argument concerning Sally's notes that we feel must be

---

plained its disinclination to allow the Commonwealth carte blanche to lead Sally during her crucial testimony, but proclaimed the request would be revisited based on the progression of Sally's testimony.

46. We again pause to take note of Martin's disconcerting use of selective quotations from the record. In support of his argument that

Sally improperly used her notes during her testimony, Martin cherry-picks testimony explaining *why* the notes were taken, but purposefully excludes Sally's testimony that she could not remember all of the incidents and the notes served to refresh her memory—testimony he argues was foundationally necessary for Sally's use of notes.

addressed ahead of a possible retrial. Martin argues a foundation must be laid for Sally's use of notes on an incident-by-incident basis. He claims, without citing any relevant authority, that Sally must show her memory must be refreshed regarding each specific instance of sexual abuse before she is permitted to consult her notes to refresh her memory.[47]

Nothing in KRE 612 or our case law requires such a specific and repetitive foundation. Requiring such would frustrate the purpose of the Kentucky Rules of Evidence, which is stated to be ascertaining the truth without "unjustifiable expense and delay."[48] In keeping with the rules' general lean toward admissibility of all relevant evidence,[49] we see fit to hold that only a general foundation—that Sally once had personal knowledge of the sexual assaults about which she is asked to testify, and her memory must now be refreshed—to permit her use of notes under KRE 612.

We also urge the trial court and the Commonwealth to ensure that Sally does not read from her notes verbatim at retrial. Martin does not raise this issue, but the record reveals some instances where Sally appears to read directly from her notes instead of reviewing them to allow her to testify from memory. As outlined above, when a writing is simply consulted by a witness, KRE 612 controls and the testimony thereafter elicited is a product of the refreshed memory, not the writing. If, on a retrial, Sally slips into reading her notes aloud, KRE 803(5) becomes the controlling evidentiary rule, and a different, more burdensome, foundation is required for the reading of her notes to become admissible as substantive evidence. The record makes explicit the Commonwealth's intention was not for Sally to read portions of her notes to the jury. In line with this intention, extra attention should be provided during a retrial to prevent Sally's reciting her notes to the jury unless the trial court finds that practice acceptable under KRE 803(5).

### III. CONCLUSION.

For the foregoing reasons, we find the instructions used to convict Martin of the crimes charged in Indictment Nos. 11–CR–00061 and 12–CR–00060 violated his right to a unanimous verdict. We reverse those convictions and remand to the trial court for a disposition not inconsistent with this opinion. But, finding no error in Martin's complicity convictions charged in Indictment No. 13–CR–00019, we affirm those convictions and the sentences imposed for those convictions.

Minton, C.J.; Abramson, Cunningham, Keller, Noble, and Venters, JJ., sitting. Noble and Venters, JJ., concur. Abramson, J., concurs except as to Section II. B.2., in which she concurs in result only. Keller, J., dissents by separate opinion in which Cunningham, J., joins.

### KELLER, J., DISSENTING:

The majority opinion accurately sets forth the law with regard to unanimous verdict issues. However, I dissent from the majority's opinion reversing Martin's

---

**47.** Were Martin's view of the foundational requirements of KRE 612 to prevail, the Commonwealth would first have to ask Sally about her memory regarding a specific instance of sexual assault. Sally would then have to respond that she does not remember the details of that incident, and that reviewing her notes would serve to refresh her memory. This argument is contrary to Martin's opposition to the Commonwealth's use of leading questions at trial.

**48.** KRE 102.

**49.** *See* KRE 402 ("All relevant evidence is admissible...").

convictions for two reasons. First, I believe that, in this case, the error cited by the majority simply is not palpable. To establish that palpable error occurred, a defendant must show that, absent the error, the result would have been different or that the error was "so fundamental as to threaten [his] entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky.2006).

The jurors believed that Martin committed all of the crimes with which he was charged because the evidence of Martin's guilt in this matter was overwhelming. Not only did Sally testify in detail regarding their ongoing and long-term sexual relationship, Martin confessed in consistent detail about that relationship to Tina, Detective Moore, Pastor Maroni, Pastor Maroni's wife, and Brittany Piascik, a supervisor and social worker for the Cabinet for Health and Family Services. The majority concedes that, in light of this overwhelming evidence of guilt, there is no chance that, absent the error, the result would have been different. I agree. However, I cannot agree with the majority that, in light of this overwhelming evidence of guilt, the error deprived Martin of due process of law, particularly when Martin did not object to the instructions.

As Justice Cunningham noted in his dissent in *Johnson:*

> We are watering down our palpable error standard with holdings such as this to the point that it behooves the defense lawyer not to object on jury instructions and just allow the trial court to walk—unwarned—onto the unanimity land mine.
>
> . . . .
>
> It is because of this strong sense of fairness to our trial judges that we have developed a long line of cases dictating that we reverse on unpreserved error

only in the most drastic of cases. *See McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky.2012) (quoting *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006)) (*Manifest injustice* is found "if the error seriously affected the 'fairness, integrity, or public reputation of the proceeding.'"); *Chavies v. Commonwealth*, 374 S.W.3d 313, 322–23 (Ky.2012) ("A party claiming palpable error must show a *probability of a different result* or error so fundamental as to threaten a defendant's entitlement to due process of law. It should be so egregious that *it jumps off the page . . . and cries out for relief.*"); *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky.2006) ("To discover manifest injustice, a reviewing court must plumb the depths of the proceeding . . . to determine whether the defect in the proceeding was *shocking* or jurisprudentially intolerable."); *Brock v. Commonwealth*, 947 S.W.2d 24, 28 (Ky. 1997) ("[T]he requirement of 'manifest injustice' as used in RCr 10.26 [ ] mean[s] that the error must have prejudiced the substantial rights of the defendant, i.e., a substantial possibility exists that the result of the trial would have been different."); *Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky.2009) ("An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice, unless, in other words, *the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable.'"*) (Emphasis added throughout citations).

405 S.W.3d at 461.

Second, the majority's decision herein, without any guidance to the parties, cre-

ates a nearly insurmountable problem with regard to the jury instructions in this case.[50] The evidence indicated that Martin and Sally had sexual intercourse, at a minimum, three to four times a week over a period of more than three years. That evidence supported the jury's finding of guilt on all of the charges, and it certainly supported the jury's finding that Martin was guilty of four counts of first-degree unlawful transaction with a minor under indictment 11–CR–00061, and of four counts of incest under indictment 12–CR–00060.

Under the majority's holding, if the Commonwealth wants to prosecute Martin for each individual criminal act, it will be required to indict Martin for 468 to 624 separate counts of intercourse. Furthermore, depending on the evidence introduced at trial, the court may then be required to provide the jury with 468 to 624 separate instructions on each individual criminal act. With this opinion, the majority is placing a potentially significant burden on the trial court and the parties. While I believe the trial court and the parties are capable of crafting a way to meet that burden, I also believe that it might be beneficial for this Court to provide more specific guidance regarding indicting defendants and instructing juries in these types of cases.

Finally, I cannot help but note the irony in Martin's implicit complaint that the Commonwealth failed to bring enough charges against him. Palpable error simply cannot arise and flow from the Commonwealth's decision to charge Martin with 28 counts of incest and unlawful

transaction with a minor instead of charging him with more than 624 counts.

Cunningham, J. joins.

**J.S., Appellant**

v.

---

50. I recognize the creation of such a problem could not override a defendant's right to due process; however, as I stated, I do not believe Martin's due process rights were violated.