Odell K. MARTIN, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–SC–000225–MR.

Supreme Court of Kentucky.

Sept. 26, 2013.

**342**

Brandon Neil Jewell, Assistant Public Advocate, Counsel for Appellant.

Jack Conway Attorney General, Matthew Robert Krygiel, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court By Justice VENTERS.

Appellant, Odell K. Martin, appeals as a matter of right pursuant to § 110 of the Kentucky Constitution from a judgment of the Hopkins Circuit Court convicting him of first-degree trafficking in a controlled substance and of being a first-degree persistent felony offender (PFO), and sentencing him to twenty years' imprisonment.

On appeal, Appellant raises two allegations of error in the jury instructions which were not preserved for appellate review by appropriate and timely action in the trial court. Appellant requests that we review those unpreserved issues for palpable error under RCr 10.26. However, RCr 9.54(2) seemingly bars appellate review of unpreserved instructional error, and so we take this opportunity to acknowledge our inconsistent record of reviewing unpreserved instructional error, and we provide a rule to reconcile review under RCr 10.26 with RCr 9.54(2).

Appellant also raises two other allegations of unpreserved error: 1) the evidence of Appellant's criminal history presented during the penalty phase of the trial included charges that had been dismissed or amended to lesser offenses; and 2) the prosecutor made an improper argument in his closing statement to the jury. For the reasons set forth herein, we affirm the judgment of the Hopkins Circuit Court.

### I. FACTS AND PROCEDURAL BACKGROUND

Appellant's brother rented a hotel suite for the purpose of throwing a bachelor party in Appellant's honor. Appellant and other witnesses testified that while clean-

ing up the suite after the party, they found several rocks of crack cocaine in the suite's bathroom. Fearing that the hotel staff may find the drugs and report his brother to the police, Appellant decided to take away the illegal substances and dispose of them himself.

Appellant left the hotel with two friends and patronized the drive-through window of a McDonald's restaurant. A McDonald's employee observed Appellant and, thinking that he may be driving while intoxicated, called the police. Officer Haynie responded to the call and watched as Appellant drove out of the McDonald's parking lot to a nearby convenience store. Haynie parked behind Appellant's car. When he walked up to the vehicle in which Appellant was seated he detected the odor of alcohol. Haynie, who was acquainted with Appellant because they had once worked together as coal miners, asked Appellant to exit the vehicle and submit to a field sobriety test. As Appellant got out of the car, he removed several items from his pockets and handed them to a passenger. In the meantime, Officer Carlisle had arrived on the scene.

Satisfied by the field sobriety test that Appellant was not under the influence, Haynie decided not to arrest him. Carlisle, however, saw what he regarded as suspicious behavior of the passengers inside the vehicle and he suggested that Haynie ask for Appellant's consent to search the vehicle. Appellant consented.

The search produced a pill bottle with Appellant's name on the label. The bottle contained twenty-one individually wrapped plastic baggies of what was later confirmed to be crack cocaine. When Carlisle held up the bottle and inquired about it, Appellant winced and uttered an expletive.

After the passengers declined to answer Carlisle's inquiry regarding ownership of the bottle and its contents, Carlisle told them that if no one claimed responsibility they would all be charged. Appellant then told Haynie that the bottle contained crack cocaine belonging to him. Haynie shared this information with Carlisle, who again asked Appellant if the contents of the bottle were his. Appellant again admitted ownership of the drugs. Appellant was then arrested and the search of the vehicle continued. Carlisle testified that while he was being taken to the jail, Appellant expressed remorse about the cocaine, and said that he was not addicted to smoking crack cocaine but that he was addicted to selling it.

The jury found Appellant guilty of first-degree trafficking in a controlled substance, KRS 218A.1412, and of being a first-degree persistent felony offender, KRS 532.080. The trial court followed the jury's recommendation and sentenced Appellant to twenty years' imprisonment, the maximum sentence possible under these circumstances.

## II. UNPRESERVED ASSIGNMENTS OF INSTRUCTIONAL ERROR

Appellant argues that reversal of his conviction is required because of erroneous jury instructions. His allegation of error breaks down into two distinct components that we analyze separately. First, Appellant argues that he was entitled to an affirmative instruction on the concept of "innocent possession" like the one we approved in *Commonwealth v. Adkins*, 331 S.W.3d 260, 266 (Ky.2011). Second, he complains that the instruction setting forth the elements of first-degree trafficking in a controlled substance under KRS 218A.1412 did not adequately incorporate the statutory element that, to be guilty, Appellant's trafficking in a controlled substance had to be done "knowingly and unlawfully."

Neither of these arguments was preserved for appellate review, so Appellant now requests that we examine them for palpable error pursuant to RCr 10.26. RCr 10.26 provides:

A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

 Under RCr 10.26, an unpreserved error may generally be noticed on appeal *if* the error is "palpable" and *if* it "affects the substantial rights of a party." Even then, relief is appropriate only "upon a determination that manifest injustice resulted from the error." RCr 10.26. "For an error to rise to the level of palpable, 'it must be easily perceptible, plain, obvious and readily noticeable.'" *Doneghy v. Commonwealth*, 410 S.W.3d 95, No. 2011–SC–000590–MR, 2013 WL 3121911, at *6 (Ky. 2013) (quoting *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky.2006)). Generally, a palpable error affects the substantial rights of the party "only if it is more likely than ordinary error to have affected the judgment." *Ernst v. Commonwealth*, 160 S.W.3d 744, 762 (Ky.2005) (quoting Christopher C. Mueller 8s Laird C. Kirkpatrick, *Federal Evidence* § 21 (2d ed.1994)).

However, as to unpreserved allegations of *instructional* error, the concept of palpable error review is seemingly at odds with RCr 9.54(2), which states:

No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly

and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

RCr 9.54 was adopted in 1963. It appears that the first case to interpret and apply RCr 9.54(2) was *Hartsock v. Commonwealth*, where the defendant argued that the trial court erred by failing to instruct the jury on the requirement of RCr 9.62 [1] that accomplice testimony must be corroborated by other evidence. 382 S.W.2d 861 (Ky.1964). The Court held, "although it is not necessary to raise objection to the instructions at the time they are given, it is imperative that claimed errors in instructions, given or omitted, be presented to the trial court at some time, either by proper objection or by motion, and certainly no later than the motion for a new trial, before they may receive appellate review." *Id.* at 864.

Palpable error review under RCr 10.26 was introduced in 1981 and with it came a degree of confusion in our rulings. Beginning in the mid–1990s, this Court increasingly heeded the plea to rescue parties who failed to object at trial from the consequences of alleged instructional error, under the purview of palpable error review. Thereafter, it becomes increasingly difficult to glean consistency from our decisions as we struggled with this tension between strict application of RCr 9.54(2) and proper exercise of our discretion allowed by RCr 10.26. Now, in the context of the issues raised by Appellant, we resolve that tension with the following analy-

---

1. RCr 9.62, and the requirement that an accomplice's testimony must be corroborated by other evidence, was repealed in 1980.

sis of RCr 9.54 and its interaction with RCr 10.26.

### A. The omission of an innocent possession instruction

■ The first component of Appellant's claim of instructional error is that the instructions did not provide for an explicit "innocent possession" defense pursuant to *Commonwealth v. Adkins,* 331 S.W.3d 260, 266–67 (Ky.2011). The instruction we approved in *Adkins,* when warranted by the evidence, reads as follows:

A person who has temporary possession of a controlled substance for the time reasonably necessary to return the controlled substance to its owner or to turn over the controlled substance to public officers performing their official duties does not possess that controlled substance unlawfully.

*Id.* at 266.

■ We note at the outset that, Appellant never brought to the trial court's attention the instruction that he now claims was erroneously omitted. The defendant in *Adkins* had expressly requested and was denied a special jury instruction on the defense of innocent possession. *Adkins,* therefore, did not require review for palpable error under RCr 10.26. It is, of course, the duty of the trial judge in a criminal case to instruct the jury "on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Swan v. Commonwealth,* 384 S.W.3d 77, 99 (Ky. 2012) (quoting *Taylor v. Commonwealth,* 995 S.W.2d 355, 360 (Ky.1999)); *see also* RCr 9.54(1). A criminal defendant is entitled to "have every issue of fact raised by the evidence and material to the defense submitted to the jury on proper instructions." *Thomas v. Commonwealth,* 170 S.W.3d 343, 349 (Ky.2005) (citing *Hayes v.*

*Commonwealth,* 870 S.W.2d 786, 788 (Ky. 1993)). However, RCr 9.54(2) puts the burden on the parties to make their instructional preferences known to the trial judge.

We emphasized that point in *Bartley v. Commonwealth,* when we said, "[i]t is not an error, however, palpable or otherwise, for the trial court not to instruct on a lesser included offense that has not been requested." 400 S.W.3d 714, 731 (Ky. 2013) (citing *Commonwealth v. Varney,* 690 S.W.2d 758, 759 (Ky.1985)). Although palpable error under RCr 10.26 may be available for certain kinds of instructional error, for the reasons set forth herein, we now conclude RCr 9.54(2) bars palpable error review for unpreserved claims that the trial court erred in the giving or the failure to give a specific instruction. Thus, we decline to consider Appellant's claim that the jury at his trial should have been instructed on the defense of innocent possession as outlined in *Adkins.*

Fairly construed in accordance with its plain terms, RCr 9.54 applies when a party claims on appeal that error occurred in *"the giving or the failure to give an instruction."* RCr 9.54 reflects this Court's recognition that the decision to request a specific instruction or to oppose the giving of a specific instruction is often a matter of individual preference and trial strategy. For example, in *Bartley,* we noted that a defendant's failure to request an instruction on a lesser offense was "apt to have been a strategic choice." 400 S.W.3d at 732. We know that some defendants accused of a crime will desire to forego the available instructions on lesser included offenses that another defendant would insist were essential to his right to a fair trial. Similarly, a defendant may believe that a special instruction on an issue like "missing evidence" [2] or the right to remain

---

2. *See Univ. Med. Ctr., Inc. v. Beglin,* 375 S.W.3d 783, 787 (Ky.2012) and *Sanborn v.*

silent would be advantageous to his cause, while other defendants would adopt the opposite strategy. For the same kind of reasons, the Commonwealth may, in some instances, object to lesser offense instructions that in other circumstances it would insist upon.

■ We do not expect the trial judge to anticipate a party's strategic preferences and act upon them *sua sponte*. The trial judge cannot be expected to distinguish a neglectful omission from a deliberate choice. Thus, RCr 9.54 imposes upon the party the duty to inform the trial court of its preferences regarding "the giving or the failure to give" a specific jury instruction. Therefore, when the allegation of instructional error is that a particular instruction should have been given but was not or that it should not have been given but was given, RCr 9.54 operates as a bar to appellate review unless the issue was fairly and adequately presented to the trial court for its initial consideration.

■ We contrast the foregoing circumstances with the situation in which a defendant's assignment of error is not that a particular instruction should not have been given, but that the instruction given was incorrectly stated. Once the trial judge is satisfied that it is proper to give a particular instruction, it is reasonable to expect that the instruction will be properly given. While a timely objection in the trial court is always necessary to preserve the right of appellate review of a defectively phrased instruction, review under RCr 10.26 is appropriate when an unpreserved

error is palpable and when relief is necessary to avoid manifest injustice resulting from a defective instruction. In summary, assignments of error in "the giving or the failure to give" an instruction are subject to RCr 9.54(2)'s bar on appellate review, but unpreserved allegations of defects in the instructions that were given may be accorded palpable error review under RCr 10.26.

Appellant's argument on appeal—that the trial court should have given an "innocent possession" instruction of the kind we approved in *Adkins*—is precisely the kind of argument foreclosed by RCr 9.54(2) because of his failure to adequately present the matter to the trial judge. We therefore decline further review of the matter.[3]

## B. The failure to include the element of "knowingly and unlawfully" in the instruction on first-degree trafficking

■ Appellant also asserts that the instruction setting forth the elements of first-degree trafficking in a controlled substance under KRS 218A.1412 did not adequately incorporate the statutory element that, to be guilty, Appellant's trafficking in a controlled substance had to be done "knowingly and unlawfully." This assignment of error was also unpreserved. However, Appellant does not claim that an instruction on first-degree trafficking in a controlled substance should not have been given. His complaint is that the instruction was not given correctly. As such, this alleged error falls outside the scope of RCr 9.54(2), and is subject to palpable error review under RCr 10.26. Of course, for

*Commonwealth*, 754 S.W.2d 534, 539–40 (Ky. 1988), *overruled on other grounds by Hudson v. Commonwealth*, 202 S.W.3d 17 (Ky.2006).

**3.** As noted in *Adkins*, the innocent possession instruction applies to protect those who temporarily take possession of illegal drugs for the purpose of returning them to the owner or turning them over to the police. 331 S.W.3d

at 266. Notwithstanding our refusal to consider this unpreserved issue, it is difficult to ignore the observation that Appellant's stated purpose for holding the crack cocaine—to protect his brother by discarding it so it would not fall into the hands of the police—does not qualify as "innocent possession."

the matter to be palpably erroneous, it must be erroneous. Upon consideration of Appellant's concern, we find no error in the instruction given by the court.

Pursuant to KRS 218A.1412(1), "A person is guilty of trafficking in a controlled substance in the first degree when he or she *knowingly and unlawfully* traffics in: (a) Four (4) grams or more of cocaine; . . . ." (emphasis added).

In this case, the jury was instructed, in pertinent part, as follows:

> You will find the Defendant guilty of First–Degree Trafficking in a Controlled Substance more than four (4) grams of Cocaine under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county or [sic] on or about June 27, 2010 and before finding of the indictment herein, -he had in his possession a quantity of four (4) grams or more of Cocaine:
>
> AND
>
> B. That he *knew* the substance so possessed by him was Cocaine;
>
> AND
>
> C. That he had the Cocaine in his possession with the intent of selling, distributing or dispensing four (4) grams or more to another person(s).

(emphasis added).

A comparison of the instruction given in Appellant's case and the language of KRS 218A.1412 discloses that the language of Subsections B and C of the instructions adequately captures the statutory element of "knowingly and unlawfully." Subsection B required a finding by the jury that the defendant "knew" that the substance he possessed was cocaine. This, in combination with Subsection C, is the functional equivalent of the statutory language requiring that the defendant "knowingly" traffic in a controlled substance. Similarly, Subsection C of the instructions required that Appellant possessed the cocaine "with the intent of selling distributing or dispensing" it, which is functionally indistinguishable from the statutory language requiring that the defendant "unlawfully" trafficked in a controlled substance since Appellant did not claim that he was licensed to dispense crack cocaine.

It is not necessary for the jury instruction to contain an exact replication of the phrase "knowingly and unlawfully traffics in" from KRS 218A.1412. *See* 1 William S. Cooper & Donald P. Cetrulo, *Kentucky Instructions to Juries* § 9.11B (5th ed.2012) (approving of trafficking instruction consistent with the instruction in this case). The instruction is sufficient so long as it accurately incorporates all the elements of the crime and requires the jury to find each element before it finds a defendant guilty. Appellant's argument that the instruction given in this case was defective because it did not accurately reflect the language of KRS 218A.1412 is unpersuasive.

Moreover, the instruction given in this case was substantially equivalent to the instructions Appellant himself tendered to the trial court. Therefore, even if the wording of the instruction was erroneous, we would regard the error as having been invited by Appellant and not subject to appellate review. *See Quisenberry v. Commonwealth,* 336 S.W.3d 19, 37–38 (Ky. 2011) (Invited errors amount to a waiver and are not subject to appellate review.).

### III. PENALTY PHASE EVIDENCE OF PRIOR CHARGES THAT HAD BEEN DISMISSED OR AMENDED TO LESSER OFFENSES

■ Appellant next argues that his sentence must be reversed and remanded be-

cause evidence introduced during the penalty phase included references to prior charges that were dismissed or amended to lesser offenses, exceeding the scope of evidence allowed under KRS 532.055. This issue was unpreserved for appellate review.

■■■ This Court has recognized that "KRS 532.055(2)(a) permits the introduction of prior *convictions* of the defendant, not prior charges subsequently dismissed" during the penalty phase. *Robinson v. Commonwealth*, 926 S.W.2d 853, 854 (Ky. 1996) (emphasis added). Further, we have recognized that "[f]or purposes of the penalty phase, criminal charges that have subsequently been amended are the functional equivalent of dismissed charges[.]" *Blane v. Commonwealth*, 364 S.W.3d 140, 152 (Ky.2012) (citing *Chavies v. Commonwealth*, 354 S.W.3d 103, 115 (Ky.2011)). Thus, the jury cannot hear evidence during the penalty phase of charges that have been dismissed or amended to other offenses.

In this case, during the penalty phase, the Circuit Court Clerk for Hopkins County testified to Appellant's criminal history by reading from the final judgments of Appellant's prior convictions. Significantly, the clerk testified *only* to the actual charges for which a conviction was adjudged. There was no mention of any dismissed charges or of the originally-charged higher offenses that were amended to lesser offenses resulting in convictions. Neither the trial court nor the prosecutor made any references to charges other than those for which a final conviction was entered.

However, copies of the final judgments were introduced into evidence as documentary exhibits, and they did contain references to original charges that were ultimately dismissed or amended to lesser offenses. We are unable to ascertain from our review of the record whether the jury actually saw the improper evidence; Appellant cites us to no evidence that the exhibits went with the jury to the deliberation room, and our viewing of the video record reveals none. We presume, absent any indication to the contrary, that the judgments were included among the exhibits shown to the jury because RCr 9.72 provides, in pertinent part: "Upon retiring for deliberation the jury may take all papers and other things received as evidence in the case."

The circumstances surrounding the admission of Appellant's prior dismissed or amended charges are somewhat similar to those in *Chavies*, 354 S.W.3d 103. In that case, Chavies contended he was substantially prejudiced by the introduction of a prior indictment showing charges that were later dismissed or amended in the penalty phase of trial. *Id.* at 114–15. Upon review, we concluded that although the introduction of the indictment was erroneous, it was not palpable error, reasoning that (1) the defendant did not receive the maximum penalty on all of the convictions for which he was being sentenced and (2) "the dismissed and amended offenses were never pointed out to the jury by the trial judge, the Commonwealth, or the Commonwealth's witness." *Id.* at 115. Unlike Chavies, however, Appellant *did* receive the maximum allowable sentence.

In *Blane*, 364 S.W.3d 140, we found palpable error and reversed. There, however, the prosecutor had elicited direct testimony about the original charges and then compounded the error by emphasizing them in his closing argument. *Id.* at 152–53. Embellishing the defendant's criminal history by the explicit reference to the original charges, instead of the offenses of final conviction, resulted in prejudice and led directly to our conclusion in *Blane* that the error was palpable. *Id.* at

153. In contrast to *Blane,* where there was testimonial or argumentative reference to the originally charged, but later dismissed or amended, offenses, in this case there is only the *possibility* that the jurors might have gleaned that information if they looked at the judgments during their deliberations.

Under such circumstances, we do not regard the error as palpable. Whatever prejudicial influence the exhibits may have exerted was not apparent to the trial court or to Appellant's trial counsel. Even upon our presumption that the documents went to the jury room and the further assumption that the jury became aware of the original charges underlying Appellant's prior convictions, we believe that it is unlikely that such knowledge affected the resulting sentence. Appellant had six prior felony convictions, some of which were for drug-related offenses, including trafficking. He admitted at trial that he had sold illegal drugs in the past to support his family. The circumstances of this case strongly suggest that the maximum sentence resulted from the nature of this particular conviction in combination with Appellant's several prior convictions for drug-related crimes, rather than the jury's awareness of the dismissed or amended charges underlying his criminal past.

In summary, there is not a reasonable possibility that, but for the admission of prior charges which were dismissed or amended, a different sentence would have been imposed for the enhanced first-degree trafficking conviction. Thus, manifest injustice did not result and reversal for a new penalty phase is not appropriate.

## IV. ALLEGED PROSECUTORIAL MISCONDUCT DURING THE PENALTY PHASE CLOSING ARGUMENT

█ Finally, Appellant argues that reversal for a new penalty phase hearing is required because of the prosecutor's improper comments during the penalty phase closing arguments. The issue is unpreserved and again, Appellant requests review for palpable error under RCr 10.26.

The gist of Appellant's objection is that the prosecutor urged the jury to punish Appellant for the crimes of other individuals in the drug trafficking pipeline. Specifically, the prosecutor stated that "people responsible for [the prevalence of illegal drugs on our streets] ... the only ones we can touch are [Appellant] because he is here." We agree that the argument was improper because it encouraged the jury to exact a punishment upon Appellant to atone for those whose crimes were beyond the jury's reach. Nevertheless, the imposition of a maximum penalty was not surprising or unreasonable in light of the overwhelming evidence of Appellant's guilt and his history of prior drug-related crimes. We are satisfied that the improper statements made during the prosecutor's penalty phase closing argument were not palpable error.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Hopkins Circuit Court is affirmed.

All sitting. All concur.