# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: OCTOBER 29, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0402-MR

BRADLEY ANDERSON                                   APPELLANT

ON APPEAL FROM HARDIN CIRCUIT COURT
V.                       HONORABLE KELLY M. EASTON, JUDGE
NO. 18-CR-00458

COMMONWEALTH OF KENTUCKY                 APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Hardin County jury found Bradley Anderson guilty of murder. The trial court, consistent with the jury's recommendation, sentenced Anderson to life imprisonment. This appeal followed as a matter of right. *See* KY. CONST. § 110(2)(b). Having reviewed the record and the arguments of the parties, we hereby affirm the judgment of the Hardin Circuit Court.

## I. BACKGROUND

Anderson had been in a long-term relationship with Christine Ingerson. The couple had three children together, and Anderson helped raise Ingerson's daughter from a previous relationship. After Anderson and Ingerson's relationship ended at the end of September or beginning of October 2017, Ingerson moved out of Anderson's house with the children. In March 2018, however, Ingerson's living situation did not work out, and she and the children

moved back in with Anderson. Ingerson and Anderson slept in separate bedrooms and each had romantic relationships with other people.

When Ingerson moved back in with Anderson, she had already begun a romantic relationship with Stanley McFalda (hereinafter "McFalda"). McFalda was still married to Heather McFalda (hereinafter "Heather"), but they were in the process of getting divorced. McFalda would often come to the house Ingerson shared with Anderson to spend time with Ingerson. Initially, McFalda and Anderson had an amicable relationship. However, starting at the end of March 2018 until McFalda's death on April 5, 2018, Anderson became increasingly agitated about the relationship between Ingerson and McFalda.

On March 31, 2018, Anderson, Ingerson, and McFalda were spending time together at the house Anderson and Ingerson shared. At some point, Ingerson left the room for a while. An argument erupted between the two men that resulted in Anderson brandishing a loaded handgun while McFalda's young daughter was in the room with the men. The day after this event a heated text message exchange occurred between the two men, but they eventually apologized to each other, and McFalda brought a "peace offering" of marijuana to Anderson.

On April 2, 2018, Ingerson changed her relationship status on Facebook to indicate she was "in a relationship with" McFalda. Following this, her relationship with Anderson became even more strained. He sent her many text messages expressing his emotional turmoil and his desire to be with her.

2

Over the next couple of days, Heather began receiving Facebook messages from "Joe Smith." She did not know who Joe Smith was, and he refused to identify himself. The messages insinuated that Ingerson was still having a sexual relationship with Anderson and attempted to convince Heather to inform McFalda of this. The messages began implicitly threatening McFalda. Heather became concerned and informed McFalda of the Facebook messages. In turn, McFalda discussed the messages with Ingerson. McFalda and Ingerson confronted Anderson about the messages, and Anderson stated that he had also received messages from "Joe Smith."

On the morning of April 5, 2018, Ingerson began receiving "weird" text messages from Anderson. These messages continued throughout the day, and Ingerson described Anderson as "off." Anderson texted Ingerson that he felt he had "fully lost" her and made statements such as "good bye in case." When Ingerson arrived home after work that day, she found both her handgun and Anderson's handgun on his bed out of their holsters and with clips sitting next to them. She described Anderson's demeanor as "weird" and "hostile." Anderson told her that "friends" told him that McFalda did not have custody of his children because he had physically abused his daughter. Based on this information, Anderson called McFalda and told McFalda that he was no longer allowed at the house. Anderson then told Ingerson that if McFalda came to the house, Anderson would shoot him.

McFalda then called Ingerson and told her that he was coming back to the house to "work it out like men." By the time McFalda arrived, Anderson

was already outside on the front steps. McFalda parked his truck on the street. After he got out of the truck, he opened the back door of the truck to retrieve something. Anderson told the police he believed McFalda was getting a long gun, but Ingerson testified McFalda was getting a sweater. Ingerson, afraid of the confrontation that was about to erupt, ran to McFalda. She met him at the sidewalk and wrapped her arms around his neck in an attempt to "push him back" and prevent the two men from fighting.

The two men then exchanged words, and McFalda pushed Ingerson off of him. She fell to the side. Ingerson looked up and saw gunfire. Anderson had shot McFalda one time in the face, killing him.

Anderson was indicted by a Hardin County grand jury on the charge of murder. He was convicted by a Hardin Circuit Court jury and sentenced to life in prison.

## II.    ANALYSIS

Anderson alleges the trial court made three errors, each of which requires reversal of his conviction. He first alleges the trial court erred in failing to give the jury a specific instruction on how it should view mitigation evidence during the penalty phase of the trial. Second, he alleges the trial court erroneously admitted evidence of a prior dispute between Anderson and McFalda as it was improper KRE[1] 404(b) evidence. Finally, he alleges the trial court erroneously admitted information about a "Joe Smith" Facebook account,

---

[1] Kentucky Rules of Evidence.

4

as that evidence was more prejudicial than probative. After a thorough review of the record, we hold that none of these alleged errors were preserved for our review, and we decline to review them.

### A. Penalty Phase Jury Instructions

Anderson urges this Court to hold that criminal defendants who face life in prison are entitled to a jury instruction during the penalty phase of the trial explaining how the jury is to view mitigation evidence. Anderson acknowledges he made no specific objection to the trial court regarding the lack of this instruction. However, he argues his proposed jury instructions during the guilt phase of the trial adequately preserved the issue. Specifically, he points to his request that the trial court include an instruction that if the jury found Anderson guilty, "[t]here will be a further proceeding at which you will determine his penalty."

Kentucky Rule of Criminal Procedure ("RCr") 9.54(2) states as follows:

No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

By its plain language this rule requires that a party bears the burden of ensuring his position is "fairly and adequately presented to the trial judge." *See Martin v. Commonwealth*, 409 S.W.3d 340, 345 (Ky. 2013). In this case, Anderson's requested jury instruction referring to a further proceeding at which the jury would determine his penalty did nothing to apprise the trial

5

court of his desired penalty phase instruction regarding the way the jury should view mitigation evidence.

Further, Anderson never requested an instruction regarding the way the jury should view mitigation evidence and did not tender a proposed instruction on this issue. He argues that he never had the chance to do so, but that assertion is simply incorrect. Before the penalty phase began, the trial judge provided the parties with a copy of the instructions he intended to provide to the jury during that phase of the trial. He then stated, "You all had an opportunity, as I said, the instructions in this phase of the trial are essentially one page. Did anybody see any issues or error there?" Anderson's counsel made no audible response.

As such, Anderson failed to "fairly and adequately" present his position to the trial judge. Accordingly, RCr 9.54 bars review of this issue. *See Martin*, 409 S.W.3d at 346 ("[W]hen the allegation of instructional error is that a particular instruction should have been given but was not…, RCr 9.54 operates as a bar to appellate review unless the issue was fairly and adequately presented to the trial court for its initial consideration."); *Martin v. Commonwealth*, 456 S.W.3d 1, 12 (Ky. 2015) (extending the holding in *Martin*, 409 S.W.3d at 346, to sentencing-phase instructions).

## B. Evidentiary Issues

Anderson next argues that the trial court erred in admitting certain evidence against him. Specifically, he argues that the trial court erred in admitting evidence of the prior dispute between himself and McFalda during

6

which he brandished a handgun and evidence of the "Joe Smith" Facebook account. Because these arguments were not properly preserved, and Anderson did not request and brief palpable error review, we decline to review these issues.

## 1. Preservation

Anderson asserts that these alleged errors were preserved by his pretrial arguments against them and his post-trial Motion for a New Trial. A review of the record reveals that Anderson did not make a pretrial objection to admission of the evidence regarding the "Joe Smith" Facebook account. He did, however, make a pretrial objection to the evidence regarding the dispute between himself and McFalda, and that objection will be discussed in more detail below. He did not make contemporaneous objections to either piece of evidence. Although he did argue that the erroneous admission of both pieces of evidence entitled him to a new trial, a post-trial Motion for a New Trial will not preserve an issue for appellate review that was not previously preserved. *See St. Clair v. Commonwealth*, 451 S.W.3d 597, 639 (Ky. 2014). Accordingly, Anderson's argument regarding the "Joe Smith" Facebook account was not properly preserved. In order to determine if his argument regarding the dispute between himself and McFalda was preserved, we must more closely analyze his pretrial objection to the admission of this evidence.

Prior to trial, the Commonwealth filed a notice, pursuant to KRE 404(c), of its intent to introduce evidence of the March 31, 2018 dispute between Anderson and McFalda. Anderson did not file a written objection or motion in

7

limine in response to this notice. The video record provided to this Court[2] does not include any hearing where this notice was discussed until after the Commonwealth filed a motion in limine to admit the text messages between Anderson and McFalda referencing this dispute. A hearing was held on that motion, at which Anderson's counsel stated that there were some statements in the text messages that he too would want to admit at trial. The trial judge advised the parties to discuss the text messages and approach him only if they disagreed about what should be admitted.

At another hearing a few weeks later, the trial judge asked the parties about the text messages referencing the dispute between Anderson and McFalda. Anderson's attorney stated he would leave the admission of the text messages to the trial court's discretion, but that he did not believe it was prudent to consent to their admission. He did not make any more specific objection. The trial judge then stated he would rule on the admissibility of the messages as they came up in the trial.

KRE 103(d) allows an alleged error to be preserved for appellate review by "[a] motion in limine resolved by order of record." In this case, the trial court entered no pretrial order, oral or written, ruling on the admissibility of the prior dispute between Anderson and McFalda. Therefore, Anderson's pretrial

---

[2] The video record provided to this Court included eight DVDs. Several of the files on the DVDs would not play. However, neither party noted this or attempted to correct it. Although not required to, given the seriousness of the charge and the length of the sentence, this Court obtained new copies of the videos from the Hardin County Circuit Clerk's Office.

objection to the admission of this evidence was not sufficient to preserve it for our review. Further, because he did not make a contemporaneous objection to the evidence when it was admitted at trial, especially in light of the judge's statement regarding his intent to rule on the admission of the evidence when it came up in the trial, the argument is not preserved.

## 2. Review Declined

RCr 10.26 allows a court to review an unpreserved error if the error is palpable and it resulted in manifest injustice. However, "[a]bsent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008). In Anderson's brief to this Court, he alleges that his evidentiary arguments were adequately preserved and asks us to review the trial court's rulings on these issues for an abuse of discretion. In his reply brief Anderson again asserts that his arguments were preserved by his trial counsel's arguments at the pretrial conference described above and in his Motion for a New Trial. Anderson then says, "In any event, the standard, whether palpable error or abuse of discretion, is no doubt a difficult one to overcome." This is the only time that he mentions palpable error in either of his briefs in regard to the evidentiary issues. He does not explicitly request review under RCr 10.26, and he does not argue that the errors were palpable or that manifest injustice resulted from them.

In *Shepherd*, the defendant similarly did not request palpable error review in his brief to the Court. 251 S.W.3d at 316. However, in his reply brief, he asked the Court "to analyze each failure of Shepherd's trial counsel to object to the errors found on appeal as palpable errors subject to review under RCr 10.26." *Id.* We noted that this "broad request" was intended "to cover all instances of unpreserved errors without specifically stating which individual errors amounted to palpable error under RCr 10.26 or how they rose to manifest injustice." *Id.* We then went on to hold that "such a general request is not adequate to invoke palpable error review under RCr 10.26." *Id.* The same is true in this case. Anderson's passing mention of the difficulty of overcoming the palpable error standard is not sufficient to invoke palpable error review. We also do not find any "extreme circumstances amounting to a substantial miscarriage of justice." *Id.* As such, we decline to review these alleged errors.

### III. CONCLUSION

For the reasons set forth above, we hereby affirm the judgment of the Hardin Circuit Court.

All sitting. All concur.

10

COUNSEL FOR APPELLANT:

Daniel Jay Canon
Saeed & Little, LLP

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Mark Daniel Berry
Assistant Attorney General