RENDERED: JULY 11, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0128-MR

CLEYSLER RAMIREZ-GONZALEZ               APPELLANT

                   APPEAL FROM FAYETTE CIRCUIT COURT
v.              HONORABLE DIANE MINNIFIELD, JUDGE
                   ACTION NO. 21-CR-00974

COMMONWEALTH OF KENTUCKY               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, KAREM, AND McNEILL, JUDGES.

CETRULO, JUDGE: Following a trial in the Fayette Circuit Court, a jury convicted Cleysler Ramirez-Gonzalez ("Ramirez-Gonzalez") of first-degree rape, first-degree sodomy, and second-degree strangulation and sentenced him to 13 years of imprisonment. He appeals his conviction and sentence. After careful review, we find no reversible error and affirm his conviction and sentence.

## BACKGROUND

On September 14, 2021, Ramirez-Gonzalez was indicted on the charges of first-degree rape, first-degree sodomy, first-degree strangulation, intimidating a participant in the legal process, and third-degree terroristic threatening. The details concerning the events that led to his arrest were primarily elucidated at trial through the testimony of the victim, hereinafter referred to as D.D.

According to D.D., on the evening of June 7, 2021, Ramirez-Gonzalez and D.D. arrived at her apartment in Lexington, Kentucky. Ramirez-Gonzalez asked D.D. if he could use her shower, and she agreed to allow him into her apartment so that he could do so. When Ramirez-Gonzalez did not take a shower and continued to linger around the apartment, D.D. told him that he needed to leave. D.D. then took a shower herself, and when she returned to her bedroom, Ramirez-Gonzalez was still there. D.D. asked why he had not left the apartment, at which point Ramirez-Gonzalez approached her and the incidents that led to Ramirez-Gonzalez's arrest took place.

D.D. reported those incidents to the police two days later, and she was taken to the hospital where she was forensically examined by a sexual assault nurse examiner. On June 13, 2021, police took Ramirez-Gonzalez into custody. After a three-day trial in September 2023, the jury found Ramirez-Gonzalez guilty of first-

degree rape, first-degree sodomy, and second-degree strangulation. Subsequently, on the recommendation of the jury, the trial court sentenced Ramirez-Gonzalez to 13 years of imprisonment. Ramirez-Gonzalez appealed.

## STANDARD OF REVIEW

Ramirez-Gonzalez did not preserve any of his arguments for appellate review, but he asks us to review them for palpable error under Kentucky Rule of Criminal Procedure ("RCr") 10.26. "A palpable error is one [] that 'affects the substantial rights of a party' and will result in 'manifest injustice' if not considered by the court[.]" *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky. 2003) (quoting RCr 10.26). Palpable errors are "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks and citation omitted).

"When an appellate court engages in a palpable error review, its focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006). "Implicit in the concept of palpable error correction is that the error is so obvious that the trial court was remiss in failing to act upon it *sua sponte*." *Lamb v. Commonwealth*, 510 S.W.3d 316, 325 (Ky. 2017). If, after considering the entire case, "this court does not believe there is a substantial possibility that the result would have been any different," then a

-3-

palpable error has not occurred. *Schoenbachler*, 95 S.W.3d at 836 (citation omitted).

## ANALYSIS

Ramirez-Gonzalez argues that he is entitled to a new trial because: (A) his federal and state rights to due process were violated when court-appointed interpreters would not assist in interpreting confidential communications between him and his counsel on the first day of trial,[1] and the trial court erred by not *sua sponte* ordering a continuance of the trial; (B) the trial court erred by failing to instruct the jury on the lesser included offenses that he requested; and (C) the trial court erred by failing to properly admonish the jury at the close of the second day of trial.

### A. The Trial Court Did Not Err When It Did Not *Sua Sponte* Order A Continuance.

Interpreters for the Administrative Office of the Courts ("AOC") were present on the first day of trial, and throughout the trial, to keep Ramirez-Gonzalez and D.D. apprised of what was happening during the trial and to translate their statements. Before *voir dire* began, the interpreters approached the bench and voiced concerns to the trial court regarding the scope of their duties. One interpreter told the court, "we are the interpreters for the record so whenever

---

[1] Both D.D. and Ramirez-Gonzalez spoke limited English, with their first language being Spanish.

[Ramirez-Gonzalez and his attorney] go into a conversation, technically we're not supposed to [interpret] all that stuff . . . we will try our best and do what we can." Ramirez-Gonzalez did not object to or question the interpreters' understanding of their role.

However, for much of the jury selection process, the AOC interpreters did assist Ramirez-Gonzalez and his attorney by translating their communications to each other. Later, upon conferring with their supervisor, they informed the trial court that they could not continue to facilitate communications between Ramirez-Gonzalez and his attorney. The trial court informed the Commonwealth and Ramirez-Gonzalez's attorney that the AOC interpreters would still be translating "testimony and things that [were] happening in the court room, [but] it is the private sidebars that they're not going to [translate]." Ramirez-Gonzalez's attorney responded to this by stating that the AOC interpreting service did not "seem to be user friendly." However, he did not ask for a continuance nor bring the issue up again to the court. Ramirez-Gonzalez did acquire a private interpreter to facilitate communications between him and his attorney on days two and three of the trial.

For the first time, Ramirez-Gonzalez now argues that the trial court erred by not *sua sponte* ordering a continuance, which he argues, deprived him of due process. Conversely, the Commonwealth argues that we should not address

-5-

this argument because Ramirez-Gonzalez did not preserve it, and, even if we do, no palpable error occurred. We agree with the Commonwealth that no palpable error occurred.

"Upon a finding of the essential fact that a party, juror, or witness 'cannot communicate in English,'" Kentucky Revised Statute ("KRS") 30A.410 requires the court to "appoint a qualified interpreter[,] . . . [and] [t]he trial court possesses no discretion in the matter[.]" *Commonwealth v. Abukar*, 497 S.W.3d 231, 237 (Ky. 2016). Here, the trial court did appoint the AOC interpreters in accordance with KRS 30A.410.

KRS 30A.405(2) vests the Kentucky Supreme Court with the power to "prescribe standards . . . for appointment, qualifications, duties, and other matters relating to interpreters." KRS 30A.405(3) mandates that the interpreter "rules and standards [] be administered by [AOC]." KRS 30A.425 states that "[t]he duties of the interpreter *may* include . . . [i]nterpreting during court and court-related proceedings, including any and all meetings and conferences between client and his attorney[.]" (Emphasis added.) However, the rules developed by the Kentucky Supreme Court and administered by AOC make clear that "[s]worn proceedings interpreters are impartial officers of the court and **may not** participate in the facilitation of confidential, privileged, or otherwise private communication between non-Court of Justice individuals, agencies, or entities and individuals with

-6-

limited English proficiency[.]" KY. ST. ADMIN. P., AP IX, § 2(35) (emphasis added); *see also id.* at (10) & (26); *Language Access*, KENTUCKY COURT OF JUSTICE, www.kycourts.gov/Court-Programs/Language-Access (last visited May 15, 2025).[2]

Here, Ramirez-Gonzalez argues that, because the trial court knew his proficiency with English was limited, the trial court should have *sua sponte* ordered a continuance. However, this argument misses the mark because the rules our Supreme Court developed specifically instruct AOC interpreters to refrain from translating such communications. KY. ST. ADMIN. P., AP IX, § 2(35). In his brief, counsel for Ramirez-Gonzalez recognizes that restriction on AOC interpreters, but argues that here the interpreters were initially assisting and then "withdrew" their assistance with confidential communications, leaving Ramirez-Gonzalez with no way to communicate privately with counsel for the remainder of the first day. The record is not so clear as represented on appeal. What is clear is that no need for further interpreting assistance was ever communicated to the trial court. The next day, a third interpreter was seated with counsel and his client.

Furthermore, the onus was not on the trial court to provide Ramirez-Gonzalez with an interpreter for confidential communications between him and his

---

[2] The tab on this web page titled "The Role of the Sworn Proceedings Interpreter" reiterates the exact same language used in KY. ST. ADMIN. P., AP IX, § 2(35).

attorney, and Ramirez-Gonzalez has not pointed us to any authority, state or federal, which imposes such a duty on the court. Finally, Ramirez-Gonzalez never requested a recess or continuance and has not pointed us to any authority that would require the trial court to *sua sponte* order a recess or continuance in such an instance.

There is no Kentucky case directly on point for this issue; however, the United States Sixth Circuit Court of Appeals recently addressed a similar set of circumstances in an unpublished opinion, *Segura-Corro v. United States*, No. 22-6127, 2023 WL 3273103 (6th Cir. May 3, 2023). *See* Kentucky Rule of Appellate Procedure 41 (We cite to this unpublished opinion merely as persuasive, not binding, authority.).

In *Segura-Corro*, the court had appointed interpreters, but, on appeal, he argued "that the limited scope of the services provided by those interpreters prevented him from effectively communicating with his attorneys." 2023 WL 3273103, at *2. The Sixth Circuit noted that "[t]he Supreme Court has never recognized a constitutional right to an interpreter during a criminal proceeding[,]" but instead "translation services are provided" in federal criminal proceedings pursuant to statute. *Id.* (citations omitted). Ultimately, the Sixth Circuit found that "the record reflect[ed] that Segura-Corro never voiced any objection regarding the adequacy of the interpreters . . . [n]or did he provide any examples of instances

where he was unable to effectively communicate with his attorneys[.]" *Id.* at *3. Accordingly, the court determined Segura-Corro was not entitled to post conviction relief. *Id.*

We agree with the Sixth Circuit that "[o]nly if the defendant makes any difficulty with the interpreter known to the court can the judge take corrective measures. To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse." *Id.* (quoting *United States v. Sanchez*, 928 F.2d 1450, 1456 (6th Cir. 1991), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002)). Here, Ramirez-Gonzalez never requested a continuance, or even a short recess, to address his interpreter issues on the first day of trial. Defense counsel's statements to the effect that the AOC interpreting services were not "user friendly" were not enough to warrant reversal now. As we noted earlier in this Opinion, palpable error can only be found when it is obvious that the trial court was remiss in failing to act *sua sponte*. *Lamb*, 510 S.W.3d at 325. No obvious difficulty in communication between counsel and his client was presented to the trial court, and the record before us does not provide any obvious difficulty.

As such, Ramirez-Gonzalez failed to show an "easily perceptible, plain, obvious and readily noticeable" error. *See Brewer*, 206 S.W.3d at 349

(internal quotation marks and citations omitted).  Accordingly, we cannot conclude that the trial court palpably erred by failing to *sua sponte* order a continuance.

### B. Ramirez-Gonzalez Did Not Preserve His Jury Instruction Issues, And We May Not Review Those Issues For Palpable Error.

Ramirez-Gonzalez argues that at trial he requested instructions on "all lesser included offenses" and that the trial court erred by not including jury instructions for sexual abuse and sexual misconduct as lesser included offenses of first-degree rape and first-degree sodomy.  Conversely, the Commonwealth argues that this issue is not properly before us, and, even if it was, the facts of this case did not warrant the lesser included offense instructions that Ramirez-Gonzalez desired.  We agree with the Commonwealth that the issue is not properly before us.

> No party may assign as error the . . . failure to give an instruction unless the party's position has been *fairly and adequately* presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

RCr 9.54(2) (emphasis added).  Our Supreme Court has held, "[a]lthough palpable error under RCr 10.26 may be available for certain kinds of instructional error . . . we now conclude RCr 9.54(2) bars palpable error review for unpreserved claims that the trial court erred in the giving or the failure to give a specific instruction." *Martin v. Commonwealth*, 409 S.W.3d 340, 345 (Ky. 2013); *see also Thornton v.*

*Commonwealth*, 421 S.W.3d 372, 376-77 (Ky. 2013); *Jones v. Commonwealth*, 567 S.W.3d 922, 927-28 (Ky. App. 2019).

Accordingly, before we may decide whether the trial court erred by failing to instruct the jury on sexual misconduct and sexual abuse, we must determine if Ramirez-Gonzalez preserved the issue for our review. *See Martin*, 409 S.W.3d at 345. If Ramirez-Gonzalez did not properly preserve the issue, we cannot review for palpable error. *Id.*

At the end of the first day of trial, the parties and the trial court discussed jury instructions. Ramirez-Gonzalez stated that he would like "any lessers [he] could get thrown in there," but he indicated that he was unprepared to have a detailed discussion about lesser included offenses at that time. On the second day, before a lunch break, the parties and the trial court again discussed lesser included offenses. When the trial court specifically asked about lesser included offenses of first-degree rape, Ramirez-Gonzalez stated, "Judge I don't know if I can give you . . . the [] legal authority. I know that there have been occasions when I have reached plea agreements with that rather than a rape charge, and again I am not saying that's controlling here."[3] The trial court reserved its ruling on lesser included offenses of first-degree rape and first-degree sodomy until the "conclusion of proof."

---

[3] It is unclear from the record whether "with that" referred to sexual misconduct or sexual abuse.

Then, at the end of the second day of trial (the conclusion of proof), the court decided what instructions the jury would receive. The court asked the Commonwealth and Ramirez-Gonzalez if they "had an opportunity to review the proposed instructions." Ramirez-Gonzalez, through counsel, orally confirmed that he had reviewed the instructions. The next morning, on the final day of trial, the trial court tendered its final instructions to the jury. Ramirez-Gonzalez did not object to the exclusion of sexual misconduct and sexual abuse lesser included offense instructions at either of those junctures. Therefore, Ramirez-Gonzalez did not satisfy the objection clause of RCr 9.54(2). Ramirez-Gonzalez only preserved this issue if he "*fairly and adequately* presented [his position] to the trial judge by an offered instruction or by motion[.]" *See* RCr 9.54(2) (emphasis added).

As we have already stated, after the conclusion of proof, Ramirez-Gonzalez did not object to the final jury instructions. Ramirez-Gonzalez's proposed instructions are not within the record, and Ramirez-Gonzalez has not pointed us to those proposed instructions. Likewise, we have not found a single instance in the written record nor in the video record where Ramirez-Gonzalez attempted to support his supposed sexual misconduct and sexual abuse instruction requests with the facts of his case and applicable law.

We cannot hold that the scant references to sexual misconduct and sexual abuse instructions amounted to a *fair and adequate* presentation of

-12-

Ramirez-Gonzalez's position to the trial court. *See* RCr 9.54(2); *see also Pollini v. Commonwealth*, 172 S.W.3d 418, 427-28 (Ky. 2005) (holding that to preserve a jury instruction exception a party must (1) specifically object or (2) tender the instruction "in such a manner which presents the party's position 'fairly and adequately' to the trial judge." Tendering of an instruction alone is not enough to preserve the issue.). As such, we hold that Ramirez-Gonzalez failed to preserve this issue for our review, and we are barred from reviewing the issue for palpable error. *See Martin*, 409 S.W.3d at 345.

### C. The Trial Court's Failure To Admonish The Jury At The Close Of The Second Day Of Trial Did Not Amount To Reversible Error.

Ramirez-Gonzalez argues that the trial court erred by failing to admonish the jury, in accordance with RCr 9.70, before adjourning on the second day of trial. Again, he concedes that he failed to preserve this issue, but asks that we review for palpable error.

In response, the Commonwealth argues that the trial court did not palpably err because it admonished the jury, in accordance with RCr 9.70, on other occasions, including before the lunch break on the second day of trial. Further, the Commonwealth argues, Ramirez-Gonzalez did not show "that the jury discussed the case" between trial day two and three; thus no palpable error occurred. We agree.

-13-

RCr 9.70 requires trial courts to admonish the jury that:

> it is their duty not to permit anyone to speak to, or communicate with, them on any subject connected with the trial, and that all attempts to do so should be immediately reported by them to the court, and that they should not converse among themselves on any subject connected with the trial, nor form, nor express any opinion thereon, until the cause be finally submitted to them. This admonition *must be given or referred to by the court at each adjournment*.

(Emphasis added.)

Here, the trial court admonished the jury before the lunch break on day one, at the end of day one, and before the lunch break on day two. The trial court neglected to admonish the jury at the end of day two.

However, the Kentucky Supreme Court has held that "in the absence of some showing of misconduct, substantial compliance with RCr 9.70 will suffice." *Commonwealth v. Messex*, 736 S.W.2d 341, 342 (Ky. 1987) (citation omitted). While Ramirez-Gonzalez acknowledges our Supreme Court's holding in *Messex*, he argues that because the trial court's "failure happened right when the proof closed and the jury was excused for the day to go home before closing arguments . . . harm should be found sufficient to warrant reversal under RCr 10.26." Yet, Ramirez-Gonzalez has not pointed us to any juror misconduct that resulted from the trial court's failure to admonish the jury at the end of trial day two, and the trial court substantially complied with RCr 9.70 by admonishing

-14-

the jury on three other occasions. *See Messex*, 736 S.W.2d at 342. Absent such a showing of juror misconduct, we cannot hold that the trial court committed a reversible error, much less a palpable one.

Finally, Ramirez-Gonzalez asks that, if we find multiple non-reversible errors, we apply the cumulative error doctrine and reverse his conviction and sentence and remand for a new trial. As the name suggests, the cumulative error doctrine applies when "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth*, 313 S.W.3d 577, 631 (Ky. 2010). Because we have not found multiple errors, the cumulative error doctrine does not apply here.

## CONCLUSION

Based on the foregoing reasonings, we AFFIRM Ramirez-Gonzalez's conviction and sentence in the Fayette Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Brad Clark
Lexington, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky

-15-